JAMES M. CAMMACK, Respondent, *v.* J. B. SLATTERY & BRO., INC., Appellant.

*Contracts — construction — contract to pay plaintiff partly for his ideas in connection with gas-fired steam and gas-fired water radiators and in part for services — contract gave defendant power to substitute salesman in case of plaintiff's inability and charge wages to plaintiff — plaintiff's compensation was to be determined by royalty and commission on sales — radiators involved in action were of type contemplated — contract is not one of employment terminable at will nor indefinite as to term — plaintiff's incapacity due to excessive drinking which was cause beyond his control did not authorize defendant to terminate contract — original contract being under seal attempted oral modification was ineffectual except so far as carried out — plaintiff had right to repudiate oral modification which was done by bringing action — contract is not void for lack of mutuality or fraud.*

Appeal from a judgment of the Supreme Court in favor of the plaintiff, entered in the Kings county clerk's office November 14, 1923, upon the decision of the court rendered after a trial before the court at the Kings Trial Term, the jury having been discharged.

Judgment unanimously affirmed, with costs, upon opinion of Mr. Justice Taylor at Trial Term. Present — Kelly, P. J., Rich, Jaycox, Young and Kapper, JJ.

The following is the opinion of the court below:

TAYLOR, J.   The original contract dated the 19th day of July, 1915, was not distinctly a contract of employment of the plaintiff by the defendant, but partly that and partly a contract to compensate the plaintiff for the use of his ideas and plans, not necessarily patented or patentable, in connection with the gas-fired steam and gas-fired water radiators, in which his ideas were used by the defendant, who, with plaintiff's assistance, had designed a form of such radiators even before the contract was signed. Such compensation was to be based upon the selling price of radiators embodying the ideas of the plaintiff and manufactured by the defendant after the date of the contract; this I find to be true as to the originally designed radiators (including combustion chambers), each cast in two pieces, as well as those subsequently designed, manufactured and sold, each of which was cast in one piece. Those of the former type were designed, manufactured and sold before 1919, and the others thereafter. The parties recognized that both types were within the purview of the contract, and practically construed that document between themselves (*Central Trust Co.* v. *West India Improvement Co.*, 169 N. Y. 314), to the effect that the last-mentioned radiators, which defendant claimed on the trial were not within the contemplation of the parties, were actually within its terms. The payment of compensation to the plaintiff for radiators sold between 1919 and June 1, 1921, and the payment of $1,000 to him after June 1, 1921, and the attempted payment of upwards of $5,400 to him after that date are inexplicable on any other theory; in fact, the answer of the defendant, in effect, concedes the construction of the contract contended for in this respect by the plaintiff.   (See *Solomon* v. *Vallette*, 152 N. Y. 147.)   The services to be rendered by the plaintiff personally were to be rendered only during his pleasure and when he was able so to render them; indeed, it is to be gathered from the contract that upon the date thereof the parties contemplated plaintiff's possible or probable prospective inability to render services, because of a certain unfortunate tendency to drink to excess, over which habit I find that the plaintiff had no control. According to the contract, if he was unable to render service, was incapacitated by illness or for any reason beyond plaintiff's control, or even if he did not use due diligence to conduct the sales of radiators, substituted performance was provided for in the contract — in that another salesman might be engaged by the defendant to act in plaintiff's stead, the salary and expenses of such a salesman, not exceeding $400 per month, to be charged against plaintiff's compensation; plaintiff was to receive from the defendant corporation " a royalty of · ten per cent of the selling price of all   *   *   *   radiators, manufactured by them, their heirs, assigns or successors; " and in addition he was to receive a sales commission of thirteen and one-half per cent upon the amount of the sales; an account was to be struck and settlement made " to the party of the first part or his estate, or to his legal representative " on the twentieth of each month, for goods sold during the preceding month; audits of the defendant's accounts were provided for; further, it was provided that the ten per cent royalty was to be paid only in the event that the net profit from the radiators amounted to twenty per cent or more, but if less than twenty per cent the royalty was to be one-half of the net profit, but in no event less than five per cent.   The fair construction of the

contract is, in my opinion, as follows, in the respects about to be adverted to: (a) It was to apply not to any and all radiators of whatever type which might be manufactured after its date by the defendant, but only to those which embodied the ideas of the plaintiff. I find as a fact that the radiators involved in this action sold between June 1, 1921, and June 1, 1922, were of a type contemplated in the contract, upon the sales of which plaintiff's compensation was to be based; this is in line with the admission to that effect in the defendant's answer. (b) It was not a contract of employment originally, nor did the attempted parol modification thereof make it a contract of employment terminable at will, nor was it in any aspect terminable at will; it applied to all radiators embodying the plaintiff's ideas, which the defendant might manufacture and sell after the date of the contract; it was not indefinite as to its term. (See *Ehrenworth* v. *Stuhmer & Co.*, 229 N. Y. 210.) I think this proposition is demonstrated by the expressions recurring in the contract, which intimate clearly that the life of the contract might endure longer than that of the plaintiff, and that at some time the compensation provided might have to be paid to his legal representatives. (c) Plaintiff's incapacity by illness, which I find was from a cause not under his control, formed no legal basis for the defendant's two attempts to declare the contract at an end. The only legal effect which these attempted repudiations of the contract had was to excuse the plaintiff from strict performance; they operated as a waiver of plaintiff's performance under the contract. (*Stokes* v. *Mackay*, 147 N. Y. 223; *Czerney* v. *Haas*, 144 App. Div. 430.) Performance by the plaintiff personally, with the assistance of a salesman, one Wittner, employed by the plaintiff, was had until 1919, when the plaintiff became incapacitated by reason of illness induced by his uncontrolled alcoholic habits. Said salesman, in effect, in 1919, with the consent of the defendant, took the place of the plaintiff in the subsequent performance by plaintiff of the contract. Wittner's compensation was thereafter charged by the defendant to the plaintiff, against the latter's compensation under the contract, in the settlements which were had from time to time between defendant and plaintiff in relation to plaintiff's compensation, up to June 1, 1921, beyond which date, concededly, no compensation was paid to him except that in September, 1921, $1,000 was credited by the defendant to the plaintiff's account in a bank. In February, 1921, with like consent of the defendant, another salesman, Griffiths, took Wittner's place, remaining at least up to the time of the trial of this action; his compensation, like that of Wittner's, was charged to the plaintiff. In March, 1917, concededly an oral agreement was made modifying the original contract; both parties agreed that there was an oral arrangement changing the basis and rate of compensation and also fixing upon a different basis than originally provided the overhead charge upon each type of radiators except one known as the fifteen-section, which was not then being manufactured; as to which last-mentioned type I find that the agreed overhead charge remained as originally provided, viz., not exceeding fifteen per cent above the cost of material and labor. The original contract was under seal; this attempted modification by parol, therefore, was and is ineffectual except in so far as it has been executed by the parties. (*McCreery* v. *Day*, 119 N. Y. 1; *Mitchell* v. *Dunmore Realty Co.*, 156 App. Div. 117.) Therefore, as to any compensation accruing to the plaintiff under the said agreement as attempted to be modified by parol, which he has received, namely, compensation to June

1, 1921, the modified arrangement is effectual; it was possible, however, for plaintiff to repudiate the said modified arrangement as to all radiators sold after June 1, 1921, and that he has done by bringing this action demanding compensation according to the contract. I hold, under the circumstances, that as a matter of law the contract is enforcible by the plaintiff according to its original terms as to compensation from June 1, 1921; unless some one of the defendant's alleged defenses has been established against such compensation, of course, there must be charged what the defendant paid to the substituted salesman, Griffiths, for the period involved in the suit, but not in excess of $400 per month; and due credit thereon must be given for the sum of $1,000 paid in September, 1921. In view of the learning and ability exhibited in the brief of counsel for the defendant — and those qualities are also apparent in the brief of the plaintiff's counsel — it is proper to discuss briefly certain of the defendant's contentions which, after a long and thorough study and full consideration, I have overruled: (a) Defendant contends that a fair construction of the contract indicates that the only compensation the plaintiff was to be paid was compensation measured by the manufacture of radiators containing the features and ideas claimed to have been originated by the plaintiff; it is true that there was originally designed a radiator cast in two pieces; the combustion chamber was separate from the radiator portion which contained the hot water or steam; the plaintiff testifies, and I find it to be the fact, that he had the idea of the one-piece radiator subsequently manufactured, although, because of inability of defendant to obtain from the manufacturers of radiators before 1919, the radiator cast in one piece, such one-piece radiator was not manufactured at an earlier date; the parties construed the contract to include the one-piece radiator; the settlements had between 1919 and June 1, 1921, indicate this; and the answer admits that the radiators sold during the period in suit — which were radiators cast in one piece — were of the type contemplated by the contract. (b) The defendant contends also that the contract is terminable at will; I find it to be for a definite period, namely, that period subsequent to July 19, 1915, during which the defendant should manufacture radiators embodying the ideas of the plaintiff. (*Ehrenworth* v. *Stuhmer & Co.*, *supra.*) These radiators I have already found included those one-piece radiators sold by the defendant during the year covered by the complaint. (c) It is also claimed that the attempted — and to a certain extent executed — parol modification above discussed, in effect, made the contract one between the defendant as master and the plaintiff as servant — a contract of employment; that the plaintiff could be discharged therefrom and the contract terminated by the defendant for cause; and that there was justification for the defendant's discharge of the plaintiff on November 7, 1921, by reason of his habits of drunkenness and protracted illness and incapacity caused thereby. By my construction of the contract that substituted performance, through a salesman, might be had by the plaintiff, I have disposed of this contention adverse to the defendant; the compensation of this salesman from the time he took Wittner's place until June 1, 1921, was charged against what was coming to the plaintiff under the then modified contract; after June 1, 1921, it is chargeable against plaintiff's compensation under the original contract, which, by plaintiff's repudiation of the parol arrangement above mentioned, is reinstated and after June 1, 1921, is enforcible according to its terms. (*McCreery* v. *Day*, *supra; Mitchell* v. *Dunmore Realty Co.*, *supra.*) (d) The contract is not void

for lack of mutuality; the defendant agreed to pay plaintiff certain compensation; the plaintiff agreed, among other things, to sell radiators during his pleasure, and to advise with the defendant in relation to the manufacture; both of these things he did until he was incapacitated by illness.     Thereafter, with the consent of the defendant his place was taken by others, Wittner and Griffiths, respectively, who performed for him in accordance with the terms of the contract.     (e) There was no abandonment of the service of the defendant by the plaintiff.     (f) There is not a shred of evidence of fraud on the part of the plaintiff inducing the contract; there was no representation by him that his ideas embodied in the radiator designs were patented or patentable, or that he would secure to defendant the exclusive use thereof.     Hence the contract was not vitiated by fraud; and, at all events, the parties acted under the contract for nearly six years, during which no claim of fraud was made.     He was to assign to defendant the exclusive use of any patentable ideas, but there is no showing that any ideas were in that category. I deem it my duty, therefore, to direct the entry of judgment in favor of the plaintiff in accordance with the principles of law and findings of fact indicated in this memorandum.     The plaintiff in a requested finding intimates that the modified arrangement was effectual until November 7, 1921, the date of the defendant's final notice to plaintiff that the contract was terminated, and that the plaintiff is entitled to recover for the period from June 1, 1921, to November 7, 1921, only on the basis of the orally modified agreement; the defendant attempted to terminate the contract by notice in writing dated November 7, 1921; the effect of the pending action seeking compensation upon the original basis is, in my opinion, a repudiation by plaintiff as of June 1, 1921, of the attempted parol modification entered into in March, 1917.     Therefore, I have determined that plaintiff is entitled after June 1, 1921, to compensation as provided for in the original contract.     It is to be noted that in so far as the plaintiff has failed to prove the exact cause of action alleged in the complaint, the pleadings of both parties upon the trial were amended to conform to the proof; so that plaintiff's recovery will be *secundum allegata et probata* in view of such amendment.     Judgment is, therefore, directed in favor of the plaintiff against the defendant for the total sum of $16,313.20, with interest thereon from June 1, 1921, besides the costs and disbursements of this action.