**CRISLER v. ILLINOIS CENTRAL R. CO.**
No. 13667.

United States Court of Appeals,
Fifth Circuit.

May 16, 1952.

942

Ross R. Barnett, P. Z. Jones, Jackson, Miss., W. W. Ramsey, Vicksburg, Miss., for appellant.

James L. Byrd, Jackson, Miss., for appellee.

Before HOLMES, BORAH and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

The question presented for determination is whether the trial court erred in granting summary judgment in favor of the defendant in appellant's suit which asserted seniority rights as a conductor, and claimed damages for his wrongful discharge from the service of the defendant railroad. The defendant's answer admitted the terms of the employment contract[1] and the dismissal, but asserted that the discharge was for just cause and authorized because of appellant's violation of Operating Department Circular No. 12[2] and Transportation Department Rule 952,[3] in that on a specified date the conductor, George P. Crisler, had failed to properly collect transportation from passengers on his train and had failed to issue cash fare receipts at the time cash was collected.

Appellant was discharged after charges (asserting the alleged violations afterwards plead as above set forth) had been served, heard, and appealed to the General Superintendent and then to the General Manager, all as provided by the conditions of employment heretofore quoted.

While the existence of "just cause" is challenged, the procedural validity and the fairness of the investigation is not attacked. Since this question of "just cause" is controlling in our decision, a reference to the facts developed at the investigation is appropriate. On September 9, 1947, two "spotters", or operatives, in the employ of the railroad boarded Train No. 22 at the Carrollton Avenue Station in New Orleans, Louisiana, en route for Magnolia, Mississippi. Shortly after the train departed from that station, Crisler, the conductor, entered the car in which they had taken seats and "called for transportation." When he arrived at the last seat on the car where the operatives were seated he asked them where they were going. The operatives testified he asked, "Where to today, McComb or Jackson?" When told that they were going to Magnolia, he placed a "hat check" on the clip by the window on which was indicated their destination. Although Crisler testified that he twice asked them for their transportation, which was denied by the operatives, neither of them

---

1. "Conductors will not be dismissed or suspended from the Company's service without just cause; investigations will be conducted ordinarily within ten days. In case of suspension or dismissal, if the conductor thinks his sentence unjust, he shall have the right within ten days to refer his case by written statement to the Superintendent. Within ten days from receipt of this notice his case shall have a thorough investigation by Superintendent at which he shall be present. In case he shall not be satisfied with the result of said investigation, he shall have the right to appeal to the General Superintendent and from him to the General Manager."

2. "Conductors must collect proper transportation from all persons using trains of this Company, and account for collections as required under the rules.

"For each cash fare paid, a cash fare slip must be issued immediately, before proceeding to the collection of other fares or tickets.

"This applies equally to conductors, collectors, and other train employees authorized to collect fares.

"Superintendents and Train Masters must see that the provisions of this circular are complied with literally."

3. "Conductor or collector must take up tickets at the earliest moment after the train starts, cancel each ticket or trip pass by punching it as soon as taken up and issue cash fare receipt to each passenger at time cash fare is collected."

offered a ticket or cash fare, and they failed to comply with the request, if made, by merely not responding to it. The train made a stop at Manchac and from there proceeded to Ponchatoula, where it arrived approximately one hour and twenty minutes after it left New Orleans. While the train was in the station at Ponchatoula, the operatives approached Crisler as he stood on the station platform. From the vestibule of the car one of them handed him three or four one dollar bills. They testified that he told them it was not necessary for them to pay a fare since they did not have an expense account. When the money was tendered a second time Crisler accepted it without comment. Crisler denied that he refused the first tender as related by the operatives, but testified that he told them that he could not accept it because it was not the proper fare. He did accept the money and when he again boarded the train he "cut" two cash fare slips, but he did not give the receipts to the operatives because they had not paid the full fare (which was $5.06 for the two of them) and he "figured after the way the thing happened that [the operatives] had set a trap for me and got on there to get me in trouble." Although the operatives remained on the train until it arrived at Magnolia, he made no effort to collect the proper fare. He paid the difference between the money given him by the operatives and the regular fare from his personal funds and turned in the proper fare with his daily report.

At the time of the hearing Crisler explained his failure to collect the fares when he first approached the operatives and they passively refused to give him their transportation by saying that he could have collected the fares only by force and was not "big enough" to do this. He accepted the "short fare" and did not later request or demand the balance because he "knew he would not pay it."

The transcript of this hearing was before the Court, and considered by the Court along with the pleadings and the depositions of Crisler and T. J. Casey, Superintendent of the defendant, taken in the cause in Court.

As will be observed, upon the investigation and hearing of the charges the conductor did not deny, and even admitted, he had violated the two rules referred to. He merely attempted to extenuate his admitted failure of observance by reciting reasons of very doubtful validity. The rules, dealing as they do with the lifeblood of any commercial business,—the collection of proper income,—relate of course to vitally material matters. Violation being unquestioned, the employer was not required to accept reasons such as those here expressed as a valid excuse for disobedience and its failure to do so does not present any basis upon which the question of "just cause" for dismissal can be declared a factual one for determination in a suit for damages.

Further considering the case as it was finally presented to the Court, we find, contrary to the strenuous insistence of appellant, that the affidavit submitted by the plaintiff in opposition to the motion for summary judgment does not present a dispute as to any material fact. By such affidavit the plaintiff related an additional reason why he made no further demand for the fares before reaching Ponchatoula that "he expected to get some passengers to get on that he was personally acquainted with, who he could get for witnesses, as he expected trouble with the two passengers." He further stated that the regulations and rules of the railroad which required him to collect fares and issue receipts must be considered with other regulatory provisions which required him to use his discretion in dealing with passengers and that a large portion of his duties as a conductor were governed by custom and practice. His conduct on the occasion in question was in accordance with prevailing practices and he pursued what he construed to be the proper course under the circumstances.

These allegations fall short of presenting a factual dispute as to whether there had been violations of the rules governing the discharge of the conductor's duties. As stated, such violations were admitted. In substance the averments now considered are entitled to no more legal

effect than the explanations offered at the time of the hearing. When considered in relation to the undisputed facts appearing, and admissions made, upon the investigation as to the nature and extent of rule violation by the appellant, the matters asserted give rise to no factual dispute as to the existence of just cause for the dismissal which would have authorized submission of this question for determination as a matter of fact.[4] It can not be seriously urged that a conductor could be justified in waiting until his passengers approached him before insisting upon collection of their fares, or in thereafter accepting a sum less than the proper fares, without giving a cash receipt or making an effort to collect the fares, or, in any event, failing to report the matter.

We are of the opinion that none of the explanations of, or reasons for, the admitted violations of the rules present any dispute as to the material fact that there was sufficient cause for the dismissal of the appellant. Consequently, we find no error in the judgment of the trial Court which granted the motion of the defendant for summary judgment.

Judgment affirmed.

4. 35 Am.Jur., Master & Servant, § 61, n. 17.