## ST. LOUIS SOUTHWESTERN RAILWAY COMPANY OF TEXAS v. S. J. HIXON.

### No. 2153.   Decided May 10, 1911.

**1.—Master and Servant—Blacklisting—Statute—Retroactive Effect.**

It is questioned whether the Act of April 5, 1907, Laws, 30th Leg., p. 142, defining and punishing discrimination against persons seeking employment applies to cases of employees discharged after the passage of the statute but before it took effect.   (P. 270.)

**2.—Master and Servant—Reasons for Discharge—Truth of Charge.**

A railway company which, in response to a demand by a discharged employee, made under the Act of April 5, 1907, Laws, 30th Leg., p. 142, sec. 1. par. 3, for a statement in writing of the cause of his discharge, had given the cause, "insubordination," correctly, was not liable for damage (from his inability, because of such reason being given, to obtain employment from other companies) in the absence of allegation and proof that it had given such statement, not in good faith, but knowing that the charge was unfounded in fact.   (Pp. 271, 272.)

**3.—Same—Giving Full Facts—Truth of Statement.**

The requirement that the corporation on demand shall give a statement in writing of the "cause of the discharge" of the employee, does not make necessary

the statement of the full facts which were deemed to support the charge; a general statement of the charge, as "insubordination," was a sufficient, at least in the absence of demand by the employee for specific details. The statement is to be that of the cause on which the employer acted according to his understanding of the facts. That the facts did not support the charge (as where the employee's refusal to obey orders was justified by the danger involved) would not render untrue the statement of the reasons assigned, nor furnish a basis for an action for damages.   (P. 271.)

### 4.—Same—Case Stated.

Plaintiff, a brakeman, was engaged in operating a freight train upon defendant's railway: The air brakes becoming out of order on the trip and the hand brakes being also out of repair, he refused to proceed further with the train as ordered, and was discharged from the service. Applying for a statement of the cause of his discharge it was given as "insubordination." He recovered damages on the claim that his refusal to proceed with the train was justified by the danger in operating it; that the statement that he was insubordinate was giving an untrue reason for his discharge; and that by reason of its being given he was prevented from obtaining employment on other roads. Held, that the recovery was not warranted, and the judgment should be reversed and rendered for defendant. (Pp. 269-272.)

Error to the Court of Civil Appeals, Fifth District, in an appeal from Hunt County.

Hixon sued the railway company and had judgment. Defendant appealed, and on affirmance obtained writ of error.

*E. B. Perkins* and *Templeton, Crosby & Dinsmore,* for plaintiff in error.—It is not within the functions of government, in the absence of contract between parties, to compel any person, in the course of his business and against his will, to accept or retain the personal services of another; and it was the legal right of the defendant, however unwise such a course might have been, to discharge Hixon for refusing to assist in operating the train in question. E. L. & R. R. R. Co. v. Scott, 72 Texas, 70; Texas M. R. R. v. Morris, 29 Texas Civ. App., 491; Adair v. United States, 208 U. S., 161.

An obligation on the part of defendant to retain plaintiff in its employ without any contract between them to that effect, and any statute which would impose any such obligation upon defendant or confer any such right upon plaintiff, would be and is in violation of and repugnant to the following provisions of the State and Federal Constitutions: (a) The Fifth Amendment of the Constitution of the United States, which provides that no person shall be deprived of life, liberty or property without due process of law. (b) The Fourteenth Amendment of the Constitution of the United States, which provides that no State shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws. (c) Subdivision 3, sec. 9, art. 1, of the Constitution of the United States, which provides that no ex-post facto law shall be passed. (d) Subdivision 1, sec. 10, art. 1, of the Constitution of the United States, which provides that no State shall pass any ex-post facto law or law impairing the obligation of contracts. (e) Sec. 19, art. 1, of the Constitution of the State of Texas, which provides that no citizen of this State shall be deprived of life, liberty, property, privileges or immunities,

except by due course of the law of the land. (f) Sec. 16, art. 1, of the Constitution of the State of Texas, which provides that no ex-post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made. Same authorities. .

*Evans & Mitchell,* for defendant in error.—When the statute has for its purpose .the prevention of the commission of a crime or other manifest evil, it comes within the purview of the police power of the State and is a police regulation. Coffeyville V. B. & T. Co. v. Perry, 63 Kan., 66; St. Louis, I. M. & S. Ry. Co. v. Paul, 173 U. S., 404; State v. Justice, 85 Minn., 279.

Mr. Justice Ramsey delivered the opinion of the court.

This suit was instituted by Hixon against the Railway Company in the District Court of Hunt County to recover damages under this state of facts. On the 24th day of June, 1907, Hixon was in the employ of the plaintiff in error as a brakeman and on that day was engaged in operating a freight train on the line of this road between Sherman and Commerce. On the way and near to the station of Tom Bean the apparatus for applying the airbrakes to the cars in some way got out of order so that the air could not be applied. The hand-brakes on the cars were old and defective so as to be unsafe for use. Hixon and another brakeman refused to proceed with the train until the airbrakes were adjusted. The condition of affairs being reported to the officers of the company, the conductor and engineer were ordered to proceed with the train, when Hixon and the other brakeman declined to go and were left at Tom Bean. Hixon was afterwards discharged from the service of the company. The condition of the cars made it dangerous to the lives of those operating the train to move the same without airbrakes or the handbrakes being placed in better condition.

Under the provisions of the Act of the Thirtieth Legislature on the subject of "Blacklisting," approved April 5, 1907, page 142, to take effect ninety days after adjournment of the Legislature, Hixon made demand in writing upon the company for a statement of the cause of his discharge and received in reply the following: "July 15, 1907. This is to certify that S. J. Hixon has been employed in the capacity of brakeman at Commerce, Texas, on the St. Louis Southwestern Railway Company of Texas from February 9, 1907, to June 24, 1907. Discharged on account of insubordination." This was signed by J. W. Maxwell, General Superintendent.

In his petition the plaintiff claimed that he was not acting in insubordination because the conditions were such as to justify his refusal to proceed with the cars, and, therefore, that the statement of the cause of his discharge was false and that the railroad company failed to give him a statement of the true cause of his discharge in that it did not state the circumstances under which he refused to proceed in his labor. This suit was brought for the recovery of damages on account of the failure to furnish him, the plaintiff, with a true statement of the cause of his discharge and alleges the following grounds of recovery: (1) That in securing employment in the rail-

way service he was required to produce his service letter and that the production of the same, as furnished to him by the defendant, has been and will be the cause of his failure to secure employment in the future from railroads. (2) That since the receipt of the said statement he had begun service with a number of railroads, but as soon as the railroad company would hear from the St. Louis Southwestern Railroad Company of Texas he would be discharged on account of the statement received from that company that he had been discharged for insubordination. (3) That with that letter as his service letter and the charges standing on the books of the railroad company against him, as being discharged for insubordination, he will never be able to secure work on any railroad hereafter. (4) That the charge of insubordination greatly humiliates him and causes him mental suffering.

It is also alleged that if Hixon had continued in the service he could and would have received promotion and would have been able to receive an appointment to the position of conductor and would probably have been able to join the Order of Conductors, by which he would have been able upon entering the service of a new road to enter as a conductor instead of beginning as brakeman.

There was a trial before a jury which resulted in a judgment in favor of Hixon for $2500, which judgment on appeal was affirmed by the Court of Civil Appeals for the Fifth District.

In its application for writ of error, as in its brief in the Court of Civil Appeals, the plaintiff in error relies on three substantial grounds for relief, which, while presented in many forms, may be thus briefly stated.

1. That the Act under which the suit is brought is unconstitutional in that it contravenes section 8 of the Bill of Rights of this State to the effect, in substance, that every person shall be at liberty to speak, write or publish his own opinion on any subject, being responsible for the breach of such privilege, and that no law shall ever be passed curtailing the liberty of speech or the press; that such Act is violative of section 19 of the Bill of Rights of Texas, which guarantees the citizen against being deprived of liberty, property, privileges or immunities except by due process of law, as well as the Fourteenth Amendment to our Federal Constitution.

2. That since defendant in error was discharged before the Act in question went into effect, as to the claim here asserted, such law is retroactive and can have no effect.

3. That the Court of Civil Appeals erred in holding that the service letter, showing that appellant was discharged for insubordination, did not truthfully state the cause of his discharge and for this reason imputing liability to it.

The question as to the constitutionality of the particular section involved in this suit is important and far reaching, but as the case will be disposed of on other grounds, it becomes unnecessary and would probably be unwise to undertake either a discussion or decision of the constitutional question raised in the case.

As to the second question presented we are not wholly agreed and we therefore pretermit any discussion of that issue.

We are, however, all of the opinion that, under the facts of this case, under the allegations of the petition, no liability is shown, even if it should be held that the section of the Act relied on is valid and has application to this case, and that judgment, on the facts adduced, should have been rendered for plaintiff in error. The petition does not allege or claim that the service letter in question was published or circulated otherwise or further than by addressing and sending same to Hixon. The petition does not allege that the matters stated in the letter were known at the time to be untrue or corruptly or intentionally written to injure. There is no suggestion or allegation in the petition questioning the good faith or honest belief of the railway company that Hixon had been guilty of insubordination. It is not disputed in the evidence that Hixon refused to obey the orders of his superiors. He says "refusing to obey orders *is* insubordination." He further says: "I refused to handle that train. I was directed to handle it by men of authority and I refused." In justice to his position it should be further said that he testified that he refused not because he did not want to work, or did not want to obey the orders, but refused because he did not think it was safe to obey them, according to the rule which said, "take no risk when in doubt."

Paragraph 3 of section 1 of the Act on which the suit was brought is as follows: "(3) Where any corporation or receiver of same, doing business in this State, or any agent or employe of such corporation or receiver, shall have discharged an employe, and such discharged employe demands a statement in writing of the cause of his discharge, and such corporation, receiver, agent or employe thereof fails to furnish a true statement of same to such employe within ten days after such demand; provided, that such demand by the employe for said statement shall be made in writing."

By the term "a true statement" of the cause of his discharge is meant, the employer shall give, fairly, honestly, and in good faith, the ground or cause for the discharge. In other words, that the statement shall evidence correctly and truly the cause upon which the master acted. It was meant that he should not be permitted to discharge for one reason and, when called on to give a statement thereof, assign a different reason. It would indeed be a strange rule to place upon the employer the burden of giving on demand a statement leading to the discharge of his employee, under a heavy penalty for refusal so to do, and, when the true reason had been assigned inducing such discharge, to hold the employer liable in heavy damages because his understanding of what constituted insubordination was incorrect or because a court might conclude that a refusal to obey an order was not, because of the labor required not being safe in the particular instance, an act of insubordination. It seems from the testimony of Hixon that his objection to the service letter furnished him consisted largely in the fact that same did not state in detail the facts out of which the charge or claim of insubordination arose. We think this was not, under the law, required to be done. If he had been discharged for drunkenness, would it be required that it should be stated where and from whom he secured the liquor and

how much he had drunk? If his discharge had been predicated upon inefficiency or unskillfulness, would it be required that the letter should state the work that he had attempted, the tasks imposed and the details wherein he failed to measure up to the required standard? If his discharge were absence from his post of duty, did the law impose on the company the burden of writing out every fact relating to such absence? And, so, if the discharge was, as in this case, for insubordination, where is the law which requires that the company shall do more than state the fact? It is not required to write history. Besides if this should be held, there was no demand at any time, for any further statement of the facts which it was claimed constituted the insubordination, and no opportunity was given the company to comply with what now seems to be the ground of the complaint. If the company is required to write the facts in detail, shall its failure to include every such detail, whether by inadvertence or otherwise, subject it to damages? Or shall it be held that it is liable if it errs in its construction of the effect of its employees' conduct? In other words, shall a difference in the definition of a word give, under this statute, a cause of action? It is not a case where one falsely publishes of another a charge which is untrue or injurious. The statement was made to the employee alone and thus made, under penalty for refusal, in response to a written demand. In such case, where there is no claim of wilful bad faith or fraudulent and covinous purpose to deliberately state an untrue reason for the discharge, but where the reason given was, from the standpoint of the railway company wholly true, we can not consent to a judgment against such employer, acting in good faith. From what has been said it results that the judgment of the District Court and of the Court of Civil Appeals should be reversed and judgment here rendered for plaintiff in error, and it is so ordered.

*Reversed and rendered.*