[S. F. No. 9886.   In Bank.—April 19, 1928.]

JAMES M. ADAMS, Respondent, v. SOUTHERN PACIFIC
COMPANY (a Corporation) et al., Appellants.

Ford, Johnson and Bourquin for Appellants.

Theodore A. Bell and Edward S. Bell for Respondent.

THE COURT.—In this action the respondent's petition for a hearing in this court after decision by the district court of appeal, first appellate district, division one, was granted and the appeal was considered by this court. The case is unique in this jurisdiction and we have given careful attention to the matters urged by respondent for an affirmance of the judgment of the trial court in favor of the plaintiff, which judgment was reversed by the district court of appeal. We have reached the conclusion, however, that the opinion of the district court of appeal, heretofore filed herein, meet our views upon each and every matter therein discussed, and we accordingly adopt such opinion as the opinion of this court, as follows:

"This is an appeal from a judgment in favor of respondent upon the verdict of the jury awarding respondent $5,000 damages in an action in tort growing out of the alleged maintenance by appellants of a record showing an alleged false reason for the discharge of respondent from his position as conductor on a train of appellant corporation. The case is one of the first impression in this state; other jurisdictions have adjudicated actions of a somewhat similar although not identical nature.

"The facts about which there is no controversy are that respondent, James M. Adams, entered the employ of appellant Southern Pacific Company in 1891 as a brakeman, and through promotion became a conductor, continuing to work without interruption in those capacities until December 31, 1910, at which time he was discharged. It is the custom among railroads throughout the country to issue on demand of an employee leaving the service a statement showing the reason therefor. This statement is variously referred to in the record as a clearance, clearance card, service card and service letter. The clearance card merely

shows the date of entering the service of the employer, the capacities in which service was rendered, the date of leaving the employment and the reason for the severance of relations between the employer and employee. A typical clearance is such as was used in this case, the part of the clearance objected to and forming the basis of the action reading, 'Dismissed for conduct unbecoming a conductor.' It is likewise a custom among the railroads in employing men and past railroad experience to require the presentation of a 'clearance' from the last employer. For some time prior to December 31, 1910, the respondent had been passenger conductor on the branch line running generally between Vallejo and Suisun. On that date he was relieved from duty, and in July of the following year, at his own request, was furnished with a clearance card which gave the reason of his discharge, 'Dismissed for conduct unbecoming a conductor.'

"The complaint alleges that this entry in the clearance card regarding the reason for the dismissal is false, and that a clearance of this character has prevented respondent from gaining railroad employment since the date of his dismissal, and will continue to act as a bar so long as the record is maintained by the appellant railroad.

"It appears from the record that on December 1, 1910, one W. H. Cameron of Napa wrote to Charles S. Fee, then general passenger agent of the Southern Pacific Company, complaining of the conduct of respondent in the course of his work on November 27, 1910. It was charged by Cameron that on that day respondent, Adams, was disorderly and intoxicated while on duty. Suit was instituted by Adams against Cameron and Adams recovered judgment against Cameron for $5,000 as damages for libel, the damage suffered being that he lost his position with the Southern Pacific Company and was permanently deprived of obtaining railroad employment. This judgment was settled in full by the Southern Pacific Company, the case being *Adams* v. *Cameron*, 27 Cal. App. 625 [150 Pac. 1005, 151 Pac. 286].

"The issue most stressed at the trial was the truth or falsity of the charge contained in the letter from Cameron to the general agent of the company that appellant was, on November 27, 1910, disorderly and intoxicated while on duty.

"Appellants urge as grounds for reversal: 1. That the evidence is insufficient to sustain the judgment in the following particulars: First, the evidence wholly fails to show that the entry on the records of the Southern Pacific or the clearance card itself prevented Adams from obtaining other railroad employment; second, that the entry on the records and on the clearance card is true and justifiable; third, that the judgment is in excess of any damages the plaintiff could possibly have sustained; 2. That the clearance card and record were privileged communications, made in good faith and not actionable; 3. That the satisfaction of judgment in the case of *Adams* v. *Cameron* included all damages which the plaintiff seeks in this action and is a bar to recovery; 4. The action is barred by the statutes of limitations; 5. Errors of law consisting of numerous errors of court in rulings on the admission and rejection of evidence; 6. Errors of the court in its instructions to the jury.

"The evidence is without dispute—in fact, it was admitted by respondent when testifying as a witness that he operated two business enterprises outside of his employment, one of which at least was in violation of the company rules, one a stage line at Cement and the other a loan office in Oakland, where he loaned money to railroad employees at five per cent interest per month; that he owned an ark or houseboat, which was conducted as a house of prostitution and which he leased to a certain individual, and while he claims he did not know at the time of leasing the purpose for which it was to be used, he learned not long after that it was used for the purpose of prostitution; that he was treasurer and one of the organizers of an improvement club at Vallejo, which was nothing more than an illicit bar conducted for the sale of liquor contrary to law and which was closed by the chief of police of Vallejo for violation of the liquor laws, and that he frequented this club where liquor was sold in violation of the rules of the company. It is also a fact that the officers of appellant corporation knew of the ownership by respondent of the houseboat, of his connection with the Vallejo club and his frequenting this club where liquor was sold in violation of the company rules at the time the clearance card was issued.

"The railroad is not bound to retain in its service as a conductor a man who brought disrepute upon himself or

his employer by association with an illicit bar and who visited such bar where liquor was sold in violation of its rules; it is not bound to retain an employee who owned and let an ark or houseboat which he had knowledge was being used for the purpose of prostitution, nor a man who engaged in foreign business operations in violation of its rules.

"The reason assigned for discharging respondent from his position is 'dismissed for conduct unbecoming a conductor.' If conducting an illicit bar, which the chief of police found necessary to close, and letting an ark or houseboat which he had knowledge was being conducted as a house of prostitution and receiving as rent money earned from such prostitution is not conduct unbecoming a conductor, it would be difficult to know what constitutes such unbecoming conduct. It would seem that such conduct is unbecoming in any self-respecting man of any walk of life or engaged in any occupation. If the fact be true that the party discharged had conducted himself in a manner unbecoming the position he occupied, he is no worse off if his discharge clearance is founded upon an offense of which he is not guilty, if in fact he be guilty of an offense equally flagrant known to his employer at the time and coming under the same general designation. Even if it be held that respondent was not guilty of the charge of disorderly conduct and being intoxicated while on duty, there is no question but that he was guilty of the other offenses mentioned, for he himself in this action so testified, and it further appears that the other offenses were known to appellants at the time of his discharge.

"The question arose as to who is to be the judge of what constitutes ground for dismissal—what constitutes conduct unbecoming a conductor. The court permitted the jury to decide this question. The court in instructing the jury with reference to respondent Adams' connection with the social and improvement club during his employment with the company charged 'and if you further believe that his connection with said club constituted conduct unbecoming a conductor, then your verdict must be for the defendants.' And the court also in instructing the jury with reference to respondent Adams' ownership of the houseboat, which was used for the purpose of prostitution, concluded such instruction 'and if you further believe that such ownership

of such boathouse, coupled with a knowledge by the plaintiff as to the purpose for which said boat was being used, constituted conduct unbecoming a conductor, then your verdict must be for the defendants.' In other words, the jury was permitted to determine what acts in its judgment would constitute conduct unbecoming a conductor. An employee is not entitled to have a jury decide whether or not his infraction of the rules established by his employer warrants dismissal. Where the reason was, from the standpoint of the railway company acting in good faith, wholly true, a judgment against such company should not stand. (*St. Louis S. W. Ry. Co.* v. *Hixon*, 104 Tex. 267 [137 S. W. 343]; *St. Louis S. W. Ry. Co.* v. *Inman* (Tex. Civ. App.), 137 S. W. 1153; *St. Louis S. W. Ry. Co.* v. *Griffin*, 106 Tex. 477 [L. R. A. 1917B, 1108, 171 S. W. 703].)

██  "In the instant case the undisputed testimony shows that respondent Adams was guilty of offenses which the company was amply justified in determining were such as would justify his discharge because of 'conduct unbecoming a conductor,' and that the true ground for his discharge operating upon the minds of the officials who discharged him was in fact that assigned on the clearance card. This being the case, a jury was not entitled to substitute its opinion in the place of the opinion of the employer. If respondent Adams was guilty of conduct unbecoming a conductor and his discharge was justified, it naturally follows that a recovery may not be had.

██  "Respondent urges that a reversal of the judgment will render the rule of the railroad company, under which it cannot discharge an employee except upon an open and fair investigation, a nullity. Answering this contention, it is sufficient to say that the law does not require idle acts (Civ. Code, sec. 3532). As respondent admitted to the officers of the company before his discharge that he had committed the acts enumerated, an open investigation was not required, as it would be idle to investigate charges, the truth of which is admitted by the person charged.

██  Appellants contend that the satisfaction of judgment in the case of *Adams* v. *Cameron* includes all damages which Adams as plaintiff seeks in this action, and is a bar to recovery here. An examination of the complaint in *Adams* v. *Cameron*, which was introduced in evidence

in this case, shows that he attributes his discharge to the Cameron letter dated December 1, 1910. Paragraph VI of the complaint details the damage alleged to have been sustained. Included in this damage is the loss of wages and his permanent inability to again obtain employment as a railroad conductor, setting forth that he has no trade or occupation other than railroad brakeman and conductor, and that by reason of his discharge on the ground of conduct unbecoming a conductor it will be impossible for him to secure employment with said railroad company or with any other railroad company; that the various railroads which operate in California have and maintain a system of exchange references through which each railroad company is apprised of the reason or cause of an employee's discharge; that no other railroad company will employ a man discharged for conduct unbecoming a conductor, and that no railroad company will employ a new man either as a brakeman or conductor who has passed the age of forty-five years; that he was then forty-seven years of age and that this rule would, therefore, act as a permanent bar to new employment, 'and that by reason of the premises and the said acts and words of defendant, this plaintiff has been permanently deprived of the income and earnings which would otherwise accrue to him from his employment as a railroad conductor in said state of California, to his damage,' etc.

"Paragraph XX of the complaint here sets forth that by reason of the issuance of the alleged false clearance 'plaintiff at all times since July 18, 1915, has been and will be and will continue to be unable to obtain employment with the defendant corporation, or with any other railroad company operating its lines in the state of California . . . and now is deprived thereby of the right and opportunity to pursue and follow his said calling.'

"In the Cameron case respondent sought and received damages because of his inability to obtain work as a conductor in California by reason of the alleged false clearance, and here he seeks damage against appellants for the identical injury for which he was compensated in the former action. The judgment in the Cameron case was satisfied. With the satisfaction of this judgment Adams was fully compensated for all damages sustained by him by reason of his inability to secure employment as a conductor arising

out of the statement in his clearance. It is elementary that there can be but one satisfaction for any given wrong. If the Cameron letter was false and the railroad acted upon this false letter in such a manner as to do injury to Adams, there was a choice open to him to sue one or all of the persons causing such injury. Adams elected to sue Cameron and obtained a judgment, which judgment was paid. In the present action he seeks to recover for a portion of the same injury from appellants. He is not entitled to be paid twice; there can be but one satisfaction.

"Respondent urges that the action against Cameron was an action for libel committed by him in writing and publishing the letter known in this case as the 'Cameron letter'; that appellants were not parties to that action and were not bound by it in any way, and that, therefore, this action is not barred by the satisfaction of judgment in the Cameron case, and cites us to a number of authorities, both in this state and from other judisdictions. We agree with the rule announced in these cases, but the facts are not similar to those presented here. The California cases cited are *De La Guerra* v. *Newhall*, 55 Cal. 21, *Owens* v. *McNally*, 124 Cal. 29 [56 Pac. 615], and *Curtin* v. *Salmon River Co.*, 141 Cal. 308 [199 Am. St. Rep. 75, 74 Pac. 851]. In the De La Guerra case the court held that a judgment for defendants in an action for the trespassing of defendants' cattle on the plaintiff's land was not a bar to a subsequent action for a similar trespass occurring prior to those alleged in the former action. In the Owens case the court held that a former adjudication against the enforcement of a contract by the uncle to will property to the niece is not a bar to the enforcement of an executed gift of land made to her by her uncle in his lifetime, and in the Curtin case the court held that a judgment in a former suit to foreclose an invalid mortgage, which failed because the security was held to be void, is not a bar to a subsequent action on the note, in which the note is shown to have been ratified by the conduct of the corporation. In these cases the subsequent actions were not predicated on the same acts complained of in the former actions and did not demand damages for the identical injury as here, and the damage demanded had not been adjudicated and fully satisfied.

"The authorities in this state and in other jurisdictions, as far as they have been brought to our attention, seem to be uniform to the effect that the bar arises not from any particular form in which the action is brought, but arises from the fact that the party complainant has been compensated for his injury.

"The first decision in this state upon this question is *Tompkins* v. *Clay Street R. R. Co.*, 66 Cal. 163 [4 Pac. 1165], in which the court uses this language: 'Every party contributing to the injuries of plaintiff was liable to the full extent of the damages by her sustained. Her injuries gave her but a single cause of action. If she brought a separate action against the Sutter Street Company and recovered a judgment therein and such judgment had been satisfied, she could not subsequently have maintained another action for the same injuries against the Clay Street Company, inasmuch as the conclusive presumption would be that she had already received full compensation for all damages by her sustained. Damages resulting from the same wrongful transaction are ordinarily inseparable; she could not recover part from one and part from the other defendant. . . . It is to be observed that when the bar accrues in favor of some of the wrongdoers, by reason of what has been received from or done in respect to one or more of the others, that the bar arises not from any particular form that the proceeding assumes, but from the fact that the party has actually received satisfaction, or what in law is deemed the equivalent.'

"In *Butler* v. *Ashworth*, 110 Cal. 614 [43 Pac. 4, 386], the defense was set up that a judgment obtained prior to the action had been entered against the city and county of San Francisco. The first action against the city alleged damage from the overflow of sewage caused by a choked condition of the sewer. The second action was against Ashworth as superintendent of streets for damage due to the breaking of the sewer. In that case the court says: 'But the plaintiff in support of her appeal claims that this wholesome rule has no application to this case for the reason, as she contends, that the cause of action stated in her suit against the city and that stated against these defendants are not the same, and that the defendants in the two actions are in no sense joint tortfeasors; that the action relied

upon as producing the injury in the action against the city was delay in making repairs to the sewer, while these defendants are charged with an act of commission, in making of repairs in such a negligent manner as to directly conduce to the injury complained of. . . . It is nevertheless apparent that plaintiff's contention is more serious than sound, and that there exists in fact no real difference between the two causes of action stated in the two actions. Formal differences there may be, but in matters of substance there are none. In both actions the inducing proximate cause of the damage and injury alleged is the invasion of her premises by the overflowing sewage, caused by the broken and choked condition of the sewer. That is the essential fact alleged alike in both counts of her action against the city, and in the complaint in this case. That is the fact constituting the gist of the action in both cases, and, as we have seen, it was for one and the same overflow—in other words, the same fact which produced the alleged damage in both cases. . . . This was the fault of the city and the defendants, her officers alike. Whether it was caused by their joint or several acts is immaterial. It would be subordinating substance to mere form to say that these two actions do not under the circumstances rest upon one and the same cause. That being so, and it appearing that plaintiff had been once compensated for the injury suffered, the court below was right in denying her a second award of damages for the same act.'

"In *Union Associated Press Co.* v. *Press Publishing Co.*, 24 Misc. Rep. 610 [54 N. Y. Supp. 183], in an action for libel founded upon the publication by defendant in its newspaper of an article charging plaintiffs with the execution of a fraudulent scheme whereby the news was intercepted during its transmission by means of wire-tapping, the court uses this language: 'Here the allegations of the defense disclose the fact that the plaintiff actually recovered damages in an action brought against the party then charged with being responsible for the publication in this defendant's newspaper of the libel in suit. Damages were recovered not merely for the act of the Associated Press in communicating the matter to this defendant, independently of the publication, but for the injury done by the publication itself, which was alleged to have been instigated by the Associated Press. This being the situation, there appears

to be no escape from the conclusion that the plaintiffs, when prosecuting their actions against the latter corporation, elected to proceed for the particular libel against the party who was responsible jointly with the present defendant for the perpetration of the wrong, and accordingly that the satisfaction of the judgment then recovered operated to release the defendant as a joint tortfeasor from further liability.'

"It would serve no useful purpose to discuss the remaining assignments of error, as it follows from what has been said that the judgment must be reversed."

The cause is remanded with directions to the trial court to enter judgment for the defendants.