**E. S. GREGG, Plaintiff,**

v.

**ATLANTIC COAST LINE RAILROAD COMPANY, Defendant.**

Civ. A. No. 3425.

United States District Court
E. D. South Carolina,
Florence Division.

Aug. 6, 1956.

---

James P. Mozingo, III, Darlington, S. C., F. Turner Clayton, Cheraw, S. C., Benny R. Greer and John L. Nettles, Darlington, S. C., for plaintiff.

Hugh L. Willcox, Willcox, Hardee, Houck & Palmer, Florence, S. C., for defendant.

WILLIAMS, District Judge.

This action was commenced on October 22, 1952, and is based on the alleged wrongful discharge of the plaintiff by the defendant railroad corporation. The case was tried by me and a jury during the May 1953 term of this court and resulted in a mistrial. The defendant made a motion for judgment notwithstanding the verdict on the ground that the testimony showed that the plaintiff violated a rule or rules of the defendant which warranted plaintiff's dismissal. In the trial of the case, testimony was presented to show that plaintiff Gregg violated Rule "E" of the Company which provides:

"Employees must render full and complete assistance in carrying out the rules and special instructions, and must report promptly to the proper official any violation thereof."

Testimony was also introduced to show that the plaintiff violated other rules of the Company, but they need not be set forth or considered here since the facts indicate that Rule "E" was unquestionably violated.

There is no dispute that on June 28, 1951, at about 4:55 p. m. there was a near accident between the passenger train in Conductor Gregg's charge and a work train between Barnwell and Robbins, South Carolina. The testimony disclosed the fact that a serious accident was narrowly averted by the alertness of employees of the work train in getting the work train in motion and under way in time to prevent Conductor Gregg's train from colliding with it. The plaintiff at the trial of the case denied that he did not make a prompt report of the near accident. However, he admitted that he had two opportunities to make a report but did not do so because he intended to make a report when he returned to Florence. No one questions the fact that it is most vital for the safety of railroad operations that prompt reports be made

of so serious a matter as a near accident. The testimony on that point is not in conflict. A prompt report in this case could mean nothing less than informing one's immediate superiors of the near accident at the earliest reasonable opportunity. Conductor Gregg had ample opportunity to make a report at Robbins, South Carolina, and at Augusta, Georgia, but failed to do so. Conductor Gregg's duty to make the report, according to the undisputed testimony, was equally pressing, whether he or other persons were responsible for the near accident. Some one violated a rule or rules of the Company or the near accident would not have occurred.

There is no real dispute on the question that Conductor Gregg violated a rule of the Company of a substantial, important and vital nature. The testimony showed that he did not make a prompt report as required by Rule E. I think that I committed error in submitting the case to the jury. At the time I assumed that there were some facts in dispute, but after careful consideration of the entire record I am convinced that there is no dispute as to the facts; there is no doubt that the plaintiff violated Rule E of the Company.

The law of the case under such circumstances is quite clear. All of the cases hold that where the facts are not disputed, it is for the Court to say whether or not a discharge is justified. In the case of Adams v. Southern P. Co., 1928, 204 Cal. 63, 266 P. 541, 543, 57 A.L.R. 1066, the plaintiff, a conductor, had been discharged for conduct unbecoming his office. The Court said:

"The question arose as to who is to be the judge of what constitutes ground for dismissal—what constitutes conduct unbecoming a conductor. The court permitted the jury to decide this question. The court in instructing the jury with reference to respondent Adams' connection with the social and improvement club during his employment with the company charged, 'and if you further believe that his connection with said club constituted conduct unbecoming a conductor, then your verdict must be for the defendants.' And the court also in instructing the jury with reference to respondent Adams' ownership of the houseboat, which was used for the purpose of prostitution, concluded such instruction, 'and if you further believe that such ownership of such houseboat, coupled with a knowledge by the plaintiff as to the purpose for which said boat was being used, constituted conduct unbecoming a conductor, then your verdict must be for the defendants.' In other words, the jury was permitted to determine what acts in its judgment would constitute conduct unbecoming a conductor.

"An employee is not entitled to have a jury decide whether or not his infraction of the rules established by his employer warrants dismissal. Where the reason was, from the standpoint of the railway company acting in good faith, wholly true, a judgment against such company should not stand. St. Louis Southwestern R. Co. [of Texas] v. Hixon, 104 Tex. 267, 137 S.W. 343; St. Louis, S. F. & T. R. Co. v. Inman, Tex.Civ.App., 137 S.W. 1153; St. Louis Southwestern R. Co. [of Texas] v. Griffin, 106 Tex. 477, 171 S.W. 703, L.R.A.1917B, 1108."

In the above case, the Court submitted to the jury the question as to whether the Company was warranted in discharging the conductor, but the highest Appellate Court of California reversed the lower court and held that the jury was not entitled to decide whether the conductor's infraction of the rules established by his employer warranted his dismissal. The plaintiff having admitted an infraction of the rules, his employer was authorized to discharge him.

In the case of Crisler v. Illinois Central R. Co., 5 Cir., 196 F.2d 941, 942, the court has this to say:

" * * * On September 9, 1947, two 'spotters', or operatives, in the

employ of the railroad boarded Train No. 22 at the Carrollton Avenue Station in New Orleans, Louisiana, en route for Magnolia, Mississippi. Shortly after the train departed from that station, Crisler, the conductor, entered the car in which they had taken seats and 'called for transportation.' When he arrived at the last seat on the car where the operatives were seated he asked them where they were going. The operatives testified he asked, 'Where to today, McComb or Jackson?' When told that they were going to Magnolia, he placed a 'hat check' on the clip by the window on which was indicated their destination. Although Crisler testified that he twice asked them for their transportation, which was denied by the operatives, neither of them offered a ticket or cash fare, and they failed to comply with the request, if made, by merely not responding to it. The train made a stop at Manchac and from there proceeded to Ponchatoula, where it arrived approximately one hour and twenty minutes after it left New Orleans. While the train was in the station at Ponchatoula, the operatives approached Crisler as he stood on the station platform. From the vestibule of the car one of them handed him three or four one dollar bills. They testified that he told them it was not necessary for them to pay a fare since they did not have an expense account. When the money was tendered a second time Crisler accepted it without comment. Crisler denied that he refused the first tender as related by the operatives, but testified that he told them that he could not accept it because it was not the proper fare. He did accept the money and when he again boarded the train he 'cut' two cash fare slips, but he did not give the receipts to the operatives because they had not paid the full fare (which was $5.06 for the two of them) and he 'figured after

the way the thing happened that [the operatives] had set a trap for me and got on there to get me in trouble.' Although the operatives remained on the train until it arrived at Magnolia, he made no effort to collect the proper fare. He paid the difference between the money given him by the operatives and the regular fare from his personal funds and turned in the proper fare with his daily report."

Crisler, in the above case, explained his failure to collect fares by stating that the operatives refused to pay him when he requested them to do so and that he would have to collect the fares by force, which he was not strong enough to do; that he accepted the "short fare" and did not later request or demand the balance because he knew they would not pay it. In other words, the conductor did not deny that he had violated the rules but merely attempted to excuse his admitted failure. The court stated that the rules dealt with vital, material matters, and that their violation being in question, the employer was not required to accept reasons such as were given as a valid excuse for failure to comply with the rules, and that such explanations present no basis upon which to raise a factual issue on the question of just cause. The court, in the Crisler case, granted a peremptory judgment in favor of the defendant because of the lack of factual dispute as to whether or not there had been violations of the rules under which the conductor worked.

It is admitted in this case that an extensive and fair investigation was conducted by defendants, at which time plaintiff was represented by the local Chairman of the Order of Railway Conductors. There is no doubt that the plaintiff violated Rule E of the Company which is quoted above. This rule is important and vital to the *operation* and welfare of the railroad company. Since there is no doubt that this rule was violated by plaintiff, I am of the opinion that a directed verdict should have been granted, and that judgment should now

be entered for defendant. It is, therefore,

Ordered that the case be dismissed and judgment be entered for the defendant.