James W. KIPPEN, Appellant,

v.

AMERICAN AUTOMATIC TYPEWRITER COMPANY, Appellee.

No. 18496.

United States Court of Appeals Ninth Circuit.

Nov. 12, 1963.

Rehearing Denied Dec. 18, 1963.

Eisner & Titchell, and Norman A. Eisner, San Francisco, Cal., for appellant.

Dunne, Bledsoe, Smith, Phelps, Cathcart & Johnson, R. S. Cathcart and Richard Blos, San Francisco, Cal., for appellee.

Before HAMLEY, JERTBERG and KOELSCH, Circuit Judges.

HAMLEY, Circuit Judge.

This action to recover damages for breach of contract was brought by James W. Kippen, a citizen of California against American Automatic Typewriter Company (American), an Illinois corporation. The alleged breach of contract resulted from American's termination of plaintiff's distributorship. Federal jurisdiction rests on diversity of citizenship.

The district court found that prior to his death in June of 1960, Kippen's father had been the exclusive representative and distributor of American's office equipment machinery in the San Francisco area. Upon his decease, American appointed Kippen in writing as its exclusive distributor in the same territory and under the same terms as his father. In reliance upon this appointment, Kippen purchased the assets of the business from the executors of his father's estate. From this time until the events referred to below, Kippen carried on the distributorship in a satisfactory and adequate fashion.

Since the distributorship agreement was of indefinite duration, the trial court found that the agreement was to endure a reasonable period of time, and that a reasonable time would have been two or three years.[1]

Kippen had been known to be an alcoholic prior to 1956. Commencing with that year he overcame his condition and regularly conducted business, first for his father, and later on his own account. However, when American held a sales meeting in Los Angeles from October 30

---

1. The parties are in agreement with the district court ruling that the distributorship contract, being of indefinite duration, was to terminate only after a reasonable time.

to November 1, 1960, Kippen appeared to have been drinking. The court found that this gave American's management good reason to fear that he was reverting again to alcoholism.[2] Because of such fear, it was found, the company, on November 15, 1960, gave written notice to Kippen that his distributorship was being terminated effective December 31, 1960.

Upon these findings the district court concluded that the termination of Kippen's distributorship contract was with good cause, and that therefore Kippen was not entitled to recovery against American. Judgment was entered for American and Kippen appeals.

The first issue presented is whether American had good cause for terminating the contract with Kippen. Since Kippen's appointment contained no express condition pertaining to the use of intoxicating liquor, the issue just stated necessarily calls for a determination of whether there was an implied condition of this kind, and, if so, its nature.

Apparently believing that no such implied condition exists in the case of independent contractors, or if it does exist it is of narrow scope, Kippen argues that this was his status as distributor for American. The decisions which have come to our attention, however, treat comparable distributorship contracts, at least in part, as agency contracts.[3] Moreover, we think that in view of the duties Kippen was expected to perform the existence and scope of any such implied condition would be substantially the same

whether his relationship to American is characterized as that of independent contractor, agent or employee.

In Adams v. Southern Pac. Co., 204 Cal. 63, 266 P. 541, 57 A.L.R. 1066, it was held that an employer had good cause to terminate a contract of employment with a person who, among other things, had been guilty of visiting and patronizing an illicit bar. This is a pretty good indication that California law[4] is in accord with the general view that a principal (or employer) may, without breach of contract, terminate an arrangement with his agent (or employee) because of his excessive drink habits. Willis v. Lowery, 101 Miss. 118, 57 So. 418, 38 L.R.A.,N.S., 339; see Annot., 38 L.R. A.,N.S., 339.[5]

But it is not in every circumstance that intoxication on the part of the agent justifies termination of the contract where reliance is placed upon an implied condition.[6] It has been suggested that while one occasion of drunkenness might justify discharge of a minister of the gospel, the same conduct on the part of a day laborer might not be sufficient to justify discharge. Bass Furnace Co. v. Glassock, 82 Ala. 452, 2 So. 315 (dictum). Similarly, it has been held that it may not be good cause to discharge a sales manager who had been guilty of excessive drinking with customers, where the sales manager believed that in so doing he was promoting his company's business. Carpenter Steel Co. v. Norcross, 6 Cir., 204 F. 537.

---

2. The district court found further that after his contract was terminated, Kippen did in fact become an alcoholic.

3. See Hunt Foods, Inc. v. Phillips, 9 Cir., 248 F.2d 23; Kelly-Springfield Tire Co. v. Bobo, 9 Cir., 4 F.2d 71; Jack's Cookie Co. v. Brooks, 4 Cir., 227 F.2d 935.

4. Since this is a diversity action it is to be disposed of in the same way that a California court would dispose of it. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Since performance of the contract was to be in California, California courts would apply the law of that state with regard to the issue pre-

sented in this case. Twentieth Century-Fox Film Corp. v. Lardner, 9 Cir., 216 F.2d 844, 851.

5. The underlying theory which supports these cases is that there is implied in every agency contract a promise on the part of the agent that he will conduct himself so as not to bring disrepute upon his principal. Twentieth Century-Fox Film Corp. v. Lardner, 9 Cir., 216 F.2d 844; Restatement (Second), Agency § 380 (1958).

6. Cf. Cammack v. J. B. Slatterly & Bro., Inc., 209 App.Div. 877, 205 N.Y.S. 294, modified 241 N.Y. 39, 148 N.E. 781.

■ Like considerations lead us to conclude that American was not entitled to call an end to Kippen's contract, without affording him an opportunity to correct his conduct, unless Kippen knew, or should have known, that American regarded his drinking conduct as a breach of his implied duties under the contract.

When American appointed Kippen, it was aware of his propensity for excessive drinking. But American did not then condition the appointment upon Kippen's adopting, or continuing in, completely temperate habits. During the time after his appointment until the December following his termination, Kippen maintained his business at a satisfactory level. Under these circumstances, he could very well have assumed that intoxication which did not affect his business output would not violate the conditions of his employment.

■ American was not bound to keep an alcoholic as its distributor, simply because when he was appointed he was known to have been an alcoholic.[7] But in view of the likelihood, known to American, that Kippen would probably drink from time to time, we think it was American's duty to give Kippen advance warning as to what drinking conduct was expected of him.

Had American instructed Kippen that it regarded his drink habits as dangerous to the reputation of American's product and service and that continued drinking would be deemed a breach of contract, American could have discharged him if he failed to follow instructions. But, under the circumstances of this case, as reviewed above, American was not entitled to discharge Kippen unless, after giving him warning and allowing a reasonable opportunity to correct himself, Kippen had failed to do so.

American advances the argument that the district court found, as a matter of fact, that American had "good cause" to discharge Kippen, and that this conclusion ought not be reversed unless it is clearly erroneous.

■ Among the basic facts found by the district court were that Kippen had been an alcoholic prior to 1956, that Kippen appeared to be drunk at the Los Angeles sales meeting, that American had reason to believe that he was reverting to alcoholism. The conclusion that American therefore had "good cause" to discharge Kippen was a conclusion of law, since it was based at least in part upon the application of a legal standard.[8] For this reason, we may reverse this conclusion without regard to the strictures of Rule 52(a), Federal Rules of Civil Procedure. Stevenot v. Norberg, 9 Cir., 210 F.2d 615, 619; Plomb Tool Co. v. Sanger, 9 Cir., 193 F.2d 260, 264.

In view of the opinion expressed above concerning the first question presented by Kippen, we do not reach his further argument that the real reason for the termination was that American wanted to replace him with a stronger dealer and that the finding of fact that he was terminated because of his drinking is therefore clearly erroneous.

The judgment is reversed and the cause is remanded for further proceedings.

---

7. By entering the contract of agency with Kippen, American is deemed to have condoned, or waived any right to discharge Kippen on the grounds of, past misconduct known to American at the time it made the appointment. Goudal v. Cecil B. DeMille Pictures Corp., 118 Cal.App. 407, 5 P.2d 432, 7 P.2d 174. However, there was still an implied condition that Kippen would not, in the future, behave in such manner as to prejudice the business.

8. In Lundgren v. Freeman, 9 Cir., 307 F.2d 104, 115, we defined a conclusion of law as one "based on application of a legal standard." Similarly, in Galena Oaks Corp. v. Scofield, 5 Cir., 218 F.2d 217, 219, it was stated that insofar "as the so-called 'ultimate fact' is simply the result reached by processes of legal reasoning from, or the interpretation of the legal significance of, the evidentiary facts, it is 'subject to review free of the restraining impact of the so-called "clearly erroneous" rule.'"