[S. F. No. 22686. In Bank. Jan. 20, 1970.]

WAYNE E. WISE, Plaintiff and Respondent, v.
SOUTHERN PACIFIC COMPANY, Defendant and Appellant.

## Counsel

William R. Denton and W. A. Gregory for Defendant and Appellant.

Perkins, Carr & Anderson, Leo Fried and Thomas C. Perkins for Plaintiff and Respondent.

Bodle, Fogel, Julber & Reinhardt, George E. Bodle, Daniel Fogel, Stephen Reinhardt, Loren R. Rothschild and James H. Webster as Amici Curiae on behalf of Plaintiff and Respondent.

## Opinion

**BURKE, J.**—In this action for wrongful discharge from employment plaintiff recovered judgment, and defendant railroad company appeals. As will appear, we have concluded that defendant failed to establish its asserted ground for discharging plaintiff, that no other error has been shown, and that the judgment should be affirmed.

Plaintiff entered defendant's employ in 1936. In February 1960, following a hearing required under the collective bargaining agreement between defendant and the union to which plaintiff belongs, plaintiff was discharged for violation of rule 803 of defendant's General Rules and Regulations.[1] This action for damages followed.

On an earlier appeal (*Wise* v. *Southern Pac. Co.* (1963) 223 Cal.App.2d 50, 58-59 [35 Cal.Rptr. 652])[2] it was held that the state courts have jurisdiction and that as required by California law plaintiff employee had exhausted his administrative remedies required under his employment contract before he brought this action. We adhere to those rulings as the law of the case. (*People* v. *Durbin* (1966) 64 Cal.2d 474, 477 [50 Cal. Rptr. 657, 413 P.2d 433].)[3]

The collective bargaining agreement constituting plaintiff's employment contract provides in rule 39 thereof that plaintiff was not to be dismissed by defendant except for a just cause and after written notice to plaintiff of "the precise charge" against him and a fair hearing before a proper officer of defendant company.[4]

In January 1960 defendant served plaintiff with notice that he was charged with the solicitation of various of defendant's employees during the years 1957 and 1958 for the purpose of inducing such employees to bring personal injury lawsuits against defendant; the notice also advised plaintiff to present himself for formal hearing on the charges.[5] Following

---

[1] Rule 803: "Any act of hostility, or wilful disregard of the Company's interests will not be condoned."

[2] The appeal was from a judgment of dismissal entered after the sustaining without leave to amend of a demurrer to plaintiff's second amended complaint.

[3] The employment contract (collective bargaining agreement, rule 38, subds. (e) and (h)) gave plaintiff the alternate remedy of appeal to the National Railroad Adjustment Board, which may order reinstatement to employment (45 U.S.C.A. §§ 151, 153)—an order beyond the jurisdiction of state courts. (*Wise* v. *Southern Pac. Co., supra*, at p. 58 of 223 Cal.App.2d.) Following a previous disciplinary discharge of January 1957, plaintiff had carried the matter to the board, which in January 1958 ordered defendant to reinstate plaintiff without lost pay but with his seniority rights unimpaired.

[4] Rule 39, in full: "No employe shall be disciplined or dismissed without a fair hearing by the proper officer of the Company. Suspension in proper cases pending a hearing which shall be prompt, shall not be deemed a violation of this rule. At a reasonable time prior to the hearing, such employe shall in writing, be apprised of the precise charge against him, be given reasonable opportunity to secure the presence of necessary witnesses, and shall have the right to be represented as provided for in Rule 38. If it is found that an employe has been unjustly suspended or dismissed from the service, such employe shall be reinstated with his seniority rights unimpaired, and compensated for the wage loss, if any, resulting from said suspension or dismissal. Stenographic report of hearing will be taken if requested and employe's representative will be furnished with a copy."

[5] The notice reads, in pertinent part: "You are hereby notified to be present at the office of Superintendent . . . Brown, Sacramento, Calif., at 9:30 A.M. Tuesday,

a hearing before an officer of defendant company, and review of the hearing transcript by two other such officers, defendant dismissed plaintiff from service in February 1960.[6]

Plaintiff contends, and the trial court found and concluded, that defendant breached plaintiff's employment contract in that the hearing accorded plaintiff was not a fair hearing and proof of a just cause for dismissal had not been produced in support of defendant's charges against plaintiff.[7]

As grounds for reversal defendant urges that the hearing was fair, and that the solicitation by plaintiff of personal injury litigation against his employer (the charge set forth in the notice to plaintiff, *ante,* fn. 5) and the rendering of assistance to his employer's adversaries in litigation (an additional charge now made by defendant) constitute disloyalty as a matter of law and provide legally sufficient grounds for dismissing plaintiff.

At the outset it should be emphasized that defendant is a private corporation and not a governmental agency, and that plaintiff's employment contract did not provide for a hearing before an impartial referee or board possessing the power to subpoena evidence and to swear witnesses. Thus comparisons between the hearing accorded plaintiff here, and the hearing to which statutes often entitle public employees, are not apposite. Rather, as defendant itself notes, there were no rules or prescribed forms to be followed by the lay hearing officer of defendant company, and the hearing accorded plaintiff was "not a trial. It is an opportunity to bring out all sides of a situation. It is an investigation rather than a prosecution."

However, the employment contract *did* specify in rule 39 (*ante,* fn. 4) that plaintiff was to be dismissed only for just cause and after fair hearing upon notice of the precise charge against him. Thus as in any other action

---

January 26, 1960, for formal hearing in connection with your having allegedly solicited various employes of the Southern Pacific Company, during the years 1957 and 1958, for the purpose and with the intent of inducing these employes to bring personal injury lawsuits against this Company and to hire certain attorneys-at-law to handle and prosecute their said personal injury claims and lawsuits against this Company, and in this respect you are charged with responsibility which may involve disloyalty to this Company and violation of Rule 803 . . . that part reading: 'Any act of hostility, or wilful disregard of the Company's interest will not be condoned.'

"You are entitled to representation in accordance with the applicable agreement provisions and may bring to the hearing such witnesses as you may desire. . . ."

[6]The hearing officer was superintendent of defendant's Sacramento division. The review of the hearing transcript was made by defendant's superintendent of shops in Sacramento, and by the superintendent of defendant's mechanical department in Sacramento.

[7]As related in the opinion on the prior appeal in this case (*Wise* v. *Southern Pac. Co., supra,* 223 Cal.App.2d 50, 62), plaintiff alleged that he had complied with all the terms and conditions of the employment contract and had properly performed them, thereby putting in issue his innocence of the charge made against him that he had solicited litigation against defendant.

in which plaintiff charges breach of contract by a defendant who undertook to unilaterally terminate the contractual relationship, as did defendant here, defendant if it is to prevail must establish in court that the termination was authorized under the terms of the contract. ■ In the present case this means that to justify the dismissal of plaintiff as an employee, defendant must show that *all* of the contractual conditions were met: i.e., (1) plaintiff was given notice of the precise charge against him, (2) plaintiff was guilty as so charged, (3) the acts charged constituted a just cause for dismissal, and (4) the hearing on the charge was fair. Accordingly, in order to warrant disturbance by an appellate court of the trial court's determination that proof of a just cause for dismissal had not been produced in support of defendant's charge against plaintiff and that the hearing was not a fair hearing, defendant must demonstrate that the only reasonable view of the evidence is that all of the contractual conditions existed entitling it to discharge plaintiff. This defendant has failed to do.

Regardless of whether or not the hearing as conducted by defendant's officials was shown to be a fair hearing, a point which we do not reach, the record indicates that defendant failed to produce before the court any evidence whatever which would compel a finding that plaintiff was guilty of the solicitation charged against him. At trial plaintiff offered the transcript of the hearing into evidence for the sole purpose of showing unfairness of the hearing, and not as evidence of the truth of the matters asserted therein, as to which matters plaintiff objected to the transcript as hearsay. The court admitted the transcript into evidence for the limited purpose proposed by plaintiff. Although certain of the testimony and written statements of employees of defendant which appear in the transcript could conceivably support the solicitation charge against plaintiff, the testimony and statements were not given under oath and at trial defendant agreed that the transcript was offered "to show . . . what took place at the hearing. . . . [N]obody is going to ask this Court to determine whether [the witnesses] spoke truthfully or anybody else there. . . . In other words, our officers have made decisions based on the transcript." Defendant itself offered no evidence before the court which would support the solicitation charge.

Additionally, at trial, and in plaintiff's deposition introduced by defendant at trial, plaintiff testified with respect to each instance of alleged solicitation cited by defendant, explained the circumstances, and consistently denied that the acts charged took place. The trial court was, of course, entitled to believe plaintiff. Plaintiff's testimony was to the effect that injured members of his union had sought his advice, as their union representative, with respect to injuries sustained on the job, and that on occasion he had recommended certain specific attorneys whom he con-

sidered especially competent in the field. Such activity in assistance of his fellow employees not only did not constitute solicitation of such employees as charged by defendant, but was an activity protected under the rationale of *Brotherhood of R.R. Trainmen* v. *Virginia* (1964) 377 U.S. 1, 5-6 [12 L.Ed.2d 89, 93, 84 S.Ct. 1625, 11 A.L.R.3d 1196].[8]

Defendant refers to admissions by plaintiff in his court testimony that on various occasions he rendered assistance to attorneys in connection with personal injury cases they were handling against defendant. However, certain of such instances occurred after plaintiff was discharged in January 1957 and before he was ordered reinstated in January 1958 (see fn. 3, *ante*) and other instances took place following the discharge which gave rise to the present action. But even if those instances of rendering assistance to counsel which occurred while plaintiff was in the active employ of defendant would support defendant's contention that as a matter of law plaintiff was thereby guilty of disloyalty toward defendant as his employer, defendant failed to notify plaintiff before the hearing and dismissal here at issue that the rendering of such assistance was one of the charges against him, as defendant was required to do under rule 39 of the employment contract.[9] In sum, defendant has shown no ground for interference with the ruling of the trial court that defendant breached plaintiff's employment contract.

Defendant also contends that the trial court applied an erroneous measure of damages in favor of plaintiff. Plaintiff was awarded $7,581.51 as "lost wages," plus $8,157.14 as lost benefits of a medical plan and $1,998.91 for loss of an insurance policy, to both of which benefits he

---

[8]In *Brotherhood of Railroad Trainmen* the court declared: "It cannot be seriously doubted that the First Amendment's guarantees of free speech, petition and assembly give railroad workers the right to gather together for the lawful purpose of helping and advising one another in asserting the rights Congress gave them in the Safety Appliance Act and the Federal Employers' Liability Act, statutory rights which would be vain and futile if the workers could not talk together freely as to the best course to follow. The right of members to consult with each other in a fraternal organization necessarily includes the right to select a spokesman from their number who could be expected to give the wisest counsel. . . . And the right of the workers *personally* or through a special department of their Brotherhood to advise concerning the need for legal assistance—and, most importantly, what lawyer a member could confidently rely on—is an inseparable part of this constitutionally guaranteed right to assist and advise each other." (Italics added; 377 U.S. at pp. 5-6 [12 L.Ed.2d at p. 93].)

[9]Authorities cited by defendant for the proposition that "the discharge must stand if any grounds for discharge existed at the time of the discharge" are not helpful, as none of them is shown to have involved contractual provisions comparable to those found in rule 39. (See, e.g., *Adams* v. *Southern Pac. Co.* (1928) 204 Cal. 63 [266 P. 541, 57 A.L.R. 1066]; *Marnon* v. *Vaughan Motor Co.* (1950) 189 Ore. 339 [219 P.2d 163, 167]; 35 Am.Jur., Master and Servant, § 37, p. 471, but cf. § 38, p. 472.)

was entitled under the terms of his employment contract with defendant. The judgment thus totaled $17,737.56.

■ Defendant first urges that under the provision of rule 39 of the contract (*ante,* fn. 4) stating that if an employee has been unjustly dismissed, he "shall be reinstated with his seniority rights unimpaired, and compensated for the wage loss, if any, resulting from" the dismissal, plaintiff is entitled to recover only lost wages in this action, and not lost "fringe benefits" as well.[10] However, even if it be assumed without deciding that the contract could properly limit plaintiff's damages to the extent and in the respect for which defendant contends, it is our view that in an action for wrongful discharge, and pursuant to the present day concept of employer-employee relations, the term "wages" should be deemed to include not only the periodic monetary earnings of the employe but also the other benefits to which he is entitled as a part of his compensation. (See 35 Am.Jur., pp. 487-488, § 55; cf. *Mass* v. *Board of Education* (1964) 61 Cal.2d 612, 623 [11] [39 Cal.Rptr. 739, 394 P.2d 579].)

■ Defendant next attacks the sufficiency of the evidence to support the items of damage awarded. Plaintiff sought lost monetary wages only through the year 1964, which were computed, and awarded, as the difference between what plaintiff would have been paid if he had continued on the job with defendant, and what he actually received in other employment after defendant dismissed him. Defendant complains that commencing with the year 1965 and continuing to the date of trial early in 1967 plaintiff received more from his new employment than he would have been paid by defendant, and that defendant is entitled to a corresponding offset in mitigation of damages for the period up to trial. However, the evidence shows that during a portion of that time plaintiff was holding down both a full-time regular job, and a second, temporary, part-time job; that the excess earnings were brought about by the part-time work; and that the latter was work which plaintiff could also have performed while he was employed by defendant. Accordingly, defendant is not entitled to include the part-time earnings in calculating mitigation. (See 22 Am.Jur. 2d, Damages, pp. 106-107, § 71.)

With respect to the fringe benefits, the evidence shows that as an employee of defendant plaintiff received complete hospital and medical care coverage at a cost to him of $3 to $3.75 per month, that his wife received medical coverage at no additional charge to plaintiff, and that plaintiff also had the benefit of a life insurance policy at no charge to himself. These benefits all derived from the collective bargaining agree-

---

[10]As noted (*ante,* fn. 3), an order for reinstatement, which plaintiff could also seek under rule 39, is beyond the jurisdiction of state courts.

ment. Plaintiff's expert witness calculated that the cost to defendant to provide the described benefits from the time plaintiff was discharged and continuing through the period of his life expectancy would total $3,792.58, and that the replacement cost to plaintiff would be $8,157.14 for the medical coverage and $1,998.91 for the life insurance. As stated, the trial court awarded plaintiff the replacement cost.

Defendant contends, without citation of supporting authority, that plaintiff was entitled to recover at most only the amount defendant would have incurred to provide the medical and insurance benefits. However, the measure of damages for breach of contract is "the amount which will compensate *the party aggrieved* for all the detriment proximately caused thereby . . . ." (Civ. Code, § 3300; italics added.) Plaintiff was the aggrieved party here, and defendant's contention is without merit.

Defendant also argues that what defendant terms plaintiff's excess earnings over those he would have received from defendant should apply for the period of plaintiff's life expectancy in mitigation of the fringe benefit damages. But for reasons already stated, defendant is not entitled to claim any advantage from the excess earnings to which it refers. The comparison between the life insurance and medical plans in which plaintiff participates in his current employment, and for which he was paying $17.70 per month at time of trial, on the one hand, and the medical and insurance benefits to which he was entitled under his employment contract with defendant, on the other hand, was for the trial court. Defendant has shown no error in resolution of that issue in favor of plaintiff and against defendant's claim to be entitled to offset plaintiff's present benefits in mitigation of damages.

No other contentions appear to require discussion.

The judgment is affirmed.

Traynor, C. J., Peters, J., Tobriner, J., Mosk, J., and Devine, J. pro tem.,* concurred.

McCOMB, J.—I dissent. I would reverse the judgment for the reasons expressed by Mr. Justice David in the opinion prepared by him for the Court of Appeal in *Wise* v. *Southern Pac. Co.* (Cal.App.) 77 Cal.Rptr. 156.

---

*Assigned by the Chairman of the Judicial Council.