## DUPREE v. SAVAGE et al.

(Court of Civil Appeals of Texas. Amarillo. Feb. 15, 1913. Rehearing Denied March 8, 1913.)

**1. VENDOR AND PURCHASER (§ 130*)—MARKETABLE TITLE—FRAUD—DAMAGES—CLOUD ON TITLE.**

Where a grantor had been deeded land with a covenant to grant a strip for a street, but he platted the whole into lots, although such covenant did not provide for forfeiture for nonperformance, such strip was in the nature of a trust, and there was such a cloud on the lots, including such strip, as to render the title unmarketable.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 245, 246, 247; Dec. Dig. § 130.*

For other definitions, see Words and Phrases, vol. 2, pp. 1233–1235.]

**2. FRAUD (§ 14*)—WARRANTIES—DAMAGES.**

Where a vendor of land of which the title was not marketable by falsely representing that he had good title, and that he had it examined, led a grantee to buy it without examining the title, although the grantee could not recover on the general warranty where he had not been ejected, he could recover damages for the fraud.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 9, 10; Dec. Dig. § 14.*

For other definitions, see Words and Phrases, vol. 3, pp. 2943–2954; vol. 8, p. 7666.]

**3. FRAUD (§ 60*)—REMEDY OF PURCHASER OF UNMARKETABLE TITLE—MEASURE OF DAMAGES.**

Where a buyer of a lot, the title to a strip of which was unmarketable, set up damages in an action for the price for fraud of his grantor, he could recover as one item of damages the cost of moving his house which he had built partly on that strip, although he had not yet moved the house, and might never have to move it.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 65; Dec. Dig. § 60.*]

Appeal from District Court, Lubbock County; W. R. Spencer, Judge.

Action by J. M. Dupree against J. B. Savage and another. Judgment for defendants, and plaintiff appeals. Modified and affirmed.

Bean & Klett, of Lubbock, for appellant. W. D. Benson and W. F. Schenck, both of Lubbock, for appellees.

HENDRICKS, J. The appellant, J. M. Dupree, filed suit in the district court of Lubbock county, Tex., to recover on a vendor's lien note for $120, and for the purpose of foreclosing the vendor's lien securing said note on lots 20, 21, 22, and 23 of the Dupree addition to the town of Lubbock. The appellant had sold to the defendant Penney the property above described, who had executed the above note as a part of the purchase consideration for said property, and that afterwards the appellee Penney had conveyed to the appellee Savage two of the lots he had purchased from Dupree, and as a part of the consideration for that conveyance Savage assumed the payment of the $120 vendor's lien note, executed by Penney, in favor of Dupree. In the deed from the appellant Dupree to the appellee Penney, and also in the conveyance from Penney to the appellee J. B. Savage, there were contained clauses of general warranty in the ordinary form and in vogue in this state. The appellant Dupree had prior thereto purchased a larger tract in which these lots were contained from one E. B. Logan, who had also purchased it prior thereto from one Thad Tubbs, and in each of these deeds—that is, from Tubbs to Logan and Logan to Dupree—there is a stipulation as a part of the consideration, as follows: "And it is a further consideration in this deed that the grantee herein is to grant a strip fifty feet in width along the east line of the tract of land herein described and conveyed; also to give and grant ten feet in width, a strip along the west line of said tract of land hereinafter described, both of the said strips to be granted and used as streets and alleys." The evidence shows that, after the appellant Dupree had purchased this property from E. B. Logan, he platted the same as an addition to the town of Lubbock according to lots and blocks and streets and alleys, and executed a deed of dedication to the public for that purpose, and that in selling the four lots above described to the appellee Penney he stated to him that he had an abstract to said addition, but that the title was good, and that he would not furnish an abstract of title to the property. He further represented to the appellee Penney, after pointing out the lots to him, that the same had been surveyed, and informed him that the lots were about 40 feet wide by 142 feet long. He further showed the said Penney where to build his house, and stated, if he would build it at the place that he pointed out, that he would let the said Penney have the property, and that the house was built in accordance with the suggestion of the appellant. The appellee Penney further testified that he believed that the porch to the house was within 20 feet of the front of said lots and in the street if there was 50 feet left for street purposes, and, if 20 feet had to come off for street purposes, then the front of the house would be in the street, and would have to be moved off to be of any value. The said Penney did not know the condition of the title as to the said 20 feet off of the 50 feet indicated in the two deeds from Tubbs to Logan and Logan to Dupree. The testimony further evidences that the appellee Penney relied upon the statements and representations made with reference to the title to the property and the status and condition of the lots, and that in accordance with statements made by the appellant Dupree, with reference to the size of the lots, he started the erection of his house upon the property, a part of which was upon the 20 feet which was a part of the 50 feet on the east side of the property sold to Dupree indicated for street purposes. The appellee

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Savage testified that he asked Mr. Penney for an abstract, and that Penney told him that he had bought the lots from Dupree, and that Dupree had said that he had an abstract and had it examined and that the title was good, and that Dupree had said that the lots were about 40 by 142 feet, that Penney made the same representations to Savage, made to the former by Dupree, as to the size and location of the lots; and the testimony is susceptible of the construction that, if the said Penney had not made the statements with reference to the title to the property formerly made to him by Dupree, as well as to the size and location of the lots, he would not have purchased the same. Penney stated that Mr. Dupree was present, to the best of his recollection, at the time he was trading with Mr. Savage, and at the time of his representations and statements with reference to the lots and the title to the property. However, the witness Savage had no recollection on the subject, although stating that he did rely upon what Penney said Dupree had told him. Both of the appellees in this case resisted the payment of the vendor's lien note, pleading a partial failure of consideration on account of the alleged partial failure of title to said property, asking for judgment upon the warranty, also alleging the representations from Dupree to Penney and from Penney to Savage, pleading damages on the ground of fraud and deceit. The case was tried before the district court of Lubbock county without a jury, who gave judgment against the said Savage and Penney for the sum of $166.90 and $16.69 as attorney's fees, with interest from the date of the judgment at the rate of 10 per cent. per annum, foreclosing the lien only on lots 22 and 23, and by deductions rendering the final judgment for $18.59 against appellees.

[1] First. The appellant Dupree in several assignments and propositions contests the answer of the appellees and the judgment of the trial court on the principal ground that the stipulation contained in the deed from Tubbs to Logan and repeated in the deed from Logan to Dupree to grant the strip off the property for streets and alleys "are only covenants and that for their breach Tubbs or Logan might sue Dupree, but that such covenants do not pass to the grantees as they are reserved for the benefit of the grantors," and to support his contention cites the line of cases where the grantee in a deed, as a part of the consideration for the purchase of the land, agrees to perform some act which would constitute a personal covenant, and not a condition subsequent or otherwise, which would not operate as a ground for the forfeiture of the estate, or a rescission of the contract; for example in Railway Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39, the Supreme Court held that where the railroad company, the grantee, promised in consideration of a conveyance of a right of way to construct and maintain a station upon the land granted, without some provision for a reversion, although there was a nonperformance of the stipulation by the company, that the title to the right of way vested in the railroad company, and the grantor would be remitted to a suit for damages. However, it will be noted that the court, in announcing the above rule, stated the exception in substance that if the railroad company, for the purpose of deceiving the grantor, made false promises and representations to the grantor, relied upon by him and for the purpose of inducing the grantor to execute the deed, coupled with the subsequent failure to perform, would be ground for a rescission of the deed and the recovery of the land. In this case the grantor, Dupree, receives a deed from Logan, agreeing to grant a 50-foot strip off the land conveyed for a street, and afterwards plats the land into lots, blocks, and streets, and attempts with his plat to take 20 feet off the strip he agrees to convey, and attempts to convey to a prospective purchaser a part of this street, to the extent of this 20 feet off the street, making the representation that his title is good to the lots, and points out the boundaries of same. We are inclined to think that it is such a covenant in the deed that previous grantors (while the grant is wholly executory in its nature) could compel its execution, and that Dupree is a trustee to the two previous grantors for that purpose; and while the title itself may go to the center of the street, or probably in this instance to the boundary of the whole 50 feet, still it constitutes such an easement in future upon the land as to become an incumbrance, and to the extent that the title to the property would not be a marketable one, and in cases of fraud subject the deed to cancellation, or in the alternative, for damages, irrespective of whether the deed contains any condition of re-entry, defeasance, or forfeiture. Irrespective of whether the appellee could recover upon the warranty, still, if the title was not a marketable one, appellees were, we think entitled to damages upon the ground of fraud and deceit, which the evidence amply sustains. 3 Maupin on Marketable Title, p. 225; Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900. While the easement here is, strictly speaking, not in esse, however, we certainly think it could be made to spring into existence by the proper parties.

In a suit for specific performance, in the case of Remsen v. Wingert, 112 App. Div. 234, 98 N. Y. Supp. 388, the Supreme Court of New York held that a vendor of land agreeing to convey it with general warranty, free from all incumbrances, is not entitled to a specific performance of the contract, when a deed, under which he holds title, reserves to an adjoining owner the privilege of

keeping the windows forever open that were in the house on the adjoining lot, though in the meantime a house had been erected on the adjoining lot without any windows facing the lot in question. The court, after defining an easement, said: "The court will not force a party to take title where doubtful questions of fact and law exist concerning it, and all the parties who have a right to be heard upon the question are not before the court." While in that case there was an assurance against incumbrances, we certainly think that the existence of a trust for the creation of one would involve the property to such an extent as to refer it to the question of "marketable title," although the title in fee may still be in the grantees; and we are also inclined to think that the showing made by appellee as to its condition was such as to put the burden upon appellant to show it was a marketable title. "Thus where the building upon the property encroaches one inch upon adjacent lots to which the vendor had no title, the title is not marketable," and, "if adverse possession was claimed by the vendor, he had the burden of showing that such possession had ripened into title." 3 Devlin on Real Estate, p. 2733. The house of appellees having been placed on the proposed street certainly, in the condition of this record, he could not convey a marketable title. In the case of Koch v. Streuter, 232 Ill. 594, 83 N. E. 1073, there was a certain clause in a deed in the chain of title in question obligating the grantee to pay certain sums of money to a third person (the estate having been conveyed upon such a condition), and the Supreme Court of Illinois held that the acceptance of the conveyance by the grantee with such clause imposes a covenant on the grantee to discharge the obligation, and creates the relation of trustee and cestui que trust, and that "this trust being expressed in a deed found in a chain of title, followed the land in the hands of subsequent grantees"; and, although the court held that the clause in the deed under consideration was not a condition subsequent however, on the objection of the appellee that the title was not a merchantable one, appellee was not required to accept it.

Judge Neill, of the Fourth district, in the case of Connely v. Putnam, 51 Tex. Civ. App. 235, 111 S. W. 165, in discussing a "marketable title," says that "such a title is one free from reasonable doubt," and C. J. Garrett decided in the case of Corbett v. McGregor, 84 S. W. 278, that where there was a misrepresentation of the title which induced the purchaser to forego the examination of the title, in order that his attention may not be brought to such defects, it is as much fraud to suppress the truth as it is to utter a falsehood, and, while the party was entitled to rescission, he had the concurrent remedy for damages, where the title was not marketable; and Judge Brown of our Supreme

Court decided in the case of Buchanan v. Burnett, 102 Tex. 495, 119 S. W. 1142, 132 Am. St. Rep. 900, on the matter of representation of title, that: "Although the statement made by Buchanan to Burnett embodied a conclusion drawn from the facts relative to the title, it was in effect a representation that the facts which would constitute a good title to the land existed. It was not an opinion as to the legal effect of known facts and muniments of title for which the seller would not be responsible. The ignorance of Burnett on the subject of land titles adds force to the conclusion that the representations made by Buchanan had the effect of a statement that all the facts existed which would constitute a good title to the land." Fraudulent concealment of title is ground for rescission, although the title is of record. Campbell v. Whittingham, 5 J. J. Marsh. (Ky.) 96, 20 Am. Dec. 241. An action for rescission in cases of this character is the converse remedy to damages. In the condition of this record we decide that an action of damages for the fraud would lie.

[2] Second. In this case, under the decision of Jones' Heirs v. Paul's Heirs, 59 Tex. 41, decided by the Supreme Court, we do not think the appellees could recover upon the warranty, and are remitted to their action for deceit. In an action upon the warranty, "if a paramount title is positively asserted against the vendee, he is not required to make an unavailing and useless resistance against a claim of title which is manifestly superior and must prevail. Under such circumstances he may give up the land to the claimant and resort to his warranty. But this ouster in pais (as it is called) does not amount to an eviction unless the superior title has been positively asserted," and "the possession of the vendee under the title which he has acquired with the warranty is not disturbed by the mere existence of the superior title, and he has no right to presume it will be disturbed until he feels its real pressure upon him." S: c., supra, 59 Tex. page 45. The above enunciation seems to be the unvarying rule, and this record is not suggestive of any hostile assertion of the superior title in trust, or any pressure upon the vendee by any antagonistic beneficiary of the interest, and the stipulation has never materialized, strictly speaking, into a dedication for the purposes indicated. However, this principle does not militate against the action of fraud against the vendor for imposing upon the vendees an unmarketable title as to a portion of the lots, and asserting damages therefor; and the defendants are entitled to those damages resultant from the fraud.

[3] Third. The appellant also insists that the cost of the removal of the house from the lot is not an element of damages in this case, because the record shows the house has never been moved, and further says that as appellee Savage recovered no judgment

against appellant for damages, that the latter should not have been restricted in his recovery to $18.59 and foreclosure of that amount against Savage. It will be noted that appellant does not complain of an improper measure of damages, or suggest any different measure than the one applied by the trial court, and, as to the cost of the removal of the house, we do not think appellant can complain when you sound the doctrine of compensation. Appellant is bound to have known of the stipulation in his own deed, accepted by him, as to the street he agreed to give, and, when he platted a part of his property upon the street he agreed to grant, it constituted fraud upon subsequent purchasers if they were excused from going to the record; and Penney says when he repeated the statements to Savage made to him, Penney, by Dupree, it was his recollection that Dupree was present, which fact, however, Savage did not remember, but that he did rely upon "what Penney said Dupree told him"; and it will be further noted that Dupree did not testify in the case, either orally or by deposition, and we find that Dupree was present when the statements were made. If you resorted to a different measure of damages, whether you determine it by proportion or by the difference in the market value of the whole property with the house situated thereon, based upon a marketable and unmarketable title, in any event, the cost of removing the house would necessarily be an element of damage in any computation of damage. While it may be true that the appellees would never lose the strip, it is also true that the property could not be sold for its full value with the cloud upon it, and any reasonably prudent man would diminish the value in purchasing it with some deduction, and we do not know of any method more reasonable than the cost of removing the house, which element of damage the appellant must be charged with, in the condition of this record, as a consequence of his wrong. The other objection we think technical, and under the rule at present should not prevail. The deduction, in effect, was made as to Savage and Penney when the recovery was limited in the amount stated.

Fourth. The appellant should not have been denied his foreclosure, however, upon lots 20 and 21, in block 1 of the Dupree addition to Lubbock, in Lubbock county, Tex., for the payment of the judgment in his favor against Penney for $18.59, and we decree a judgment to that effect, and for that purpose in his favor against the said Penney, and for such error we reform and render the judgment to that extent in his favor. Overruling all other assignments, we affirm the judgment in all other respects, charging the costs of this appeal equally between appellant and E. B. Penney.

Reformed and rendered in part and affirmed.