Marvy A. **FINGER**, Trustee, Appellant,

v.

Larry W. **MORRIS** et al., Appellees.

No. 436.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

April 28, 1971.

Rehearing Denied May 26, 1971.

Clarence Mayer, of Lapin & Mayer, Houston, for appellant.

Louis M. Moore, of Moore, Morris & Payne, Houston, for appellees.

TUNKS, Chief Justice.

Marvy A. Finger, appellant, filed suit against Larry W. Morris, his two sons, Victor Morris and Ned B. Morris, III, and others for alleged fraud and breach of contract in connection with a real estate transaction wherein Finger bought about 130 acres of land from the defendants. Larry W. Morris and his two sons filed a cross-action to recover the balance due them on the promissory note given by Finger in partial payment for the land. After trial before a jury the trial court granted the Morris's motion for judgment that some of the jury's findings be disregarded and rendered judgment that Finger take nothing by his suit and that the Morris's recover on their cross-action. Finger's suit against defendants other than the Morris's was settled and disposed of by agreed judgment so that only the claims as between Finger and the Morris's are before this Court on Finger's appeal.

In 1909 a tract of land of about 150 acres in Harris County then owned by J. A. Fite, was platted as Rosslyn Subdivision. The property was subdivided into blocks and lots and streets were dedicated to the public. The lots were mostly of 25-foot width. The subdivision was in connection with a land promotion of the kind rather common at that date. Lots were sold to people all over the country. Most of the buyers thereof never took possession of or even saw the property they bought. In about 1933, Mrs. Willie Margaret Smith moved onto the property. She did not have a deed to it. She resided in a house on the property and there was a fence around its perimeter. By 1953 some of the record owners of the lots in the old subdivision began to assert claims to them. Mrs. Smith then employed the law firm of Larry W. Morris, Beatty Oldham and J.

Toll Underwood to represent her in respect to the property. She deeded to the law firm an undivided one-third interest in the property as a fee for their services.

In 1958 Larry W. Morris bought another undivided one-third interest in the property from Mrs. Smith. Title to this interest was taken in the name of Ned B. Morris, III. The consideration paid was $1,000 cash together with a $9,000 note payable in annual installments of $1,000 and with a provision that the makers incurred no personal liability on the note, but would convey the property back to Mrs. Smith if the note was not paid. Subsequently, Mrs. Smith filed a lawsuit against the Morris's in connection with that transaction and it was settled by a reconveyance to Mrs. Smith of an undivided one-ninth interest in the property. Also after the deed to the law firm that partnership was dissolved and each of its members thereby became an owner of an undivided one-ninth interest in the property. Thus, at the time of the trial, the Morris's together were owners of a one-third interest in the note given by Finger in payment for the property bought by him.

After the Morris's acquired an interest in the property they began to try to find a buyer for it. Because they could not provide to deliver record title they met difficulty in finding a title guaranty company that would issue a title policy to a purchaser. In 1962 a tentative commitment was made by City Title Company of Houston to issue the required title guaranty policy. City Title Company required that it be furnished affidavits as to Mrs. Smith's possession and use of the property. Mr. Victor Morris procured and supplied several such affidavits. The language of all of the affidavits as to Mrs. Smith's use of the land was similar. In one of them, that of Mrs. Lillie Mae Kieffaber, that language was:

" 'She and her tenants at all times since 1940 have been using the land by cultivating it, growing hay on the land, or in grazing cattle on the land. * * * That Willie Margaret Smith and her husband,

Walter Smith, moved onto the above described property in the early 1930's when they fenced the land and began cultivating the land and claiming it adversely to the world.' "

As a matter of convenience in the negotiations for and consummation of the sale of the land, legal title was placed in Beatty Oldham, as trustee, for all of the part owners, who, beside Mr. Oldham, were Mrs. Smith, Larry Morris, Ned B. Morris and Mr. J. Toll Underwood. Though those owners, except Mrs. Smith, were attorneys themselves they employed another attorney to represent all of the owners in the sales transaction. On July 10, 1962, Oldham, as trustee, and the appellant executed an earnest money contract under the terms of which Finger agreed to buy about 130 acres of the property for $3,250 per acre. Mr. Finger, at all times relevant hereto, was represented by an attorney of his selection.

One of the terms of that contract obliged the seller to furnish a title guaranty policy issued by City Title Company. On January 15, 1963, the joint owners of the land executed an instrument confirming Oldham's authority to execute and carry out the sales contract in their behalf. That instrument also recited that in order to induce City Title Company to agree to issue the title policy it was necessary for Oldham, as trustee, to enter into an indemnity agreement establishing an escrow fund to be used in protecting the title company and Finger from loss growing out of the issuance of the title policy. It was also recited that under the indemnity agreement about 20 acres of the 150-acre tract were set aside to protect against such loss. Other evidence showed that this 20-acre tract was used in settlement of suits of those claiming ownership within the 130-acre tract sold. By such settlement such claimants were given land out of the 20-acre tract in exchange for releases of their claims to tracts within the 130-acre tract.

One condition of the sales contract involved the abandonment by the City of Houston of the streets of the old Rosslyn Subdivision and the establishment of a new subdivision with lots, blocks and streets of more desirable size and layout. This was accomplished pursuant to the joint efforts of the sellers' and buyer's attorneys.

On January 17, 1963, the transaction was closed. A general warranty deed was executed and delivered by sellers. A part payment was made by the buyer and his note, secured by liens on the property, was given for the balance. The title company issued an owner's title policy. Thereupon the appellant began development of the property. Money was borrowed and used for the installation of utilities and streets in a part of the tract. The title company issued the lender's title policy. Appellant built and sold houses with the title company issuing policies to the buyers. Some lots served by utilities and streets installed by appellant were sold to another builder. The other builder built homes and sold them. The title company again issued the title policies to the builder and to those who bought from him. Appellant sold some undeveloped acreage to another builder. Again the title company issued the required policy. At the time of the trial appellant had retained ownership of only ten acres of the original 130-acre tract.

The development began and proceeded as anticipated and, apparently, would have continued but for the collapse of the City Title Company. In September of 1965 the title company became insolvent and went out of business. Thereafter it could not, and other title companies would not, issue title policies on the property to be developed and sold. Under the circumstances further development could not proceed. When the development came to a standstill, appellant stopped making payments on his note. Thereupon the Morris's made demand for payment of their share. They gave notice of their intention to foreclose the vendor's and deed of trust lien given to secure payment of the note. Finger then filed suit pursuant to which the Morris's were enjoined from foreclosing. This suit

by Finger seeks a recovery of the damages for fraud under the statute that was Art. 4004. Vernon's Ann.Tex.Civ.St. (That statute was repealed in 1967 and its subject is now covered by Sec. 27.01, Texas Business and Commerce Code, V.T.C.A.) Alternatively, recovery of damages for breach of the earnest money contract was pled by Finger. The Morris's, by general and special pleas, denied their liability upon the causes of action alleged by Finger. The Morris's filed a cross-action seeking recovery on the note given in part payment. Finger answered the cross-action alleging, among other defenses, an offset by the amount of the damages established in his causes of action for fraud and breach of contract.

In response to special issues the jury found that the Morris's represented to Finger that there was good limitation title to the property in question, that such representation was a material inducement to Finger to purchase the property, that but for such representation Finger would not have purchased the property and that there was not good limitation title to any of the property. By other answers the jury found that the Morris's concealed and misrepresented the facts with reference to the amount of land cultivated, the period of time of such cultivation and the payment of taxes on the property. There were findings that the property "in the condition it was represented to be" would have had a value of $3,250 per acre and "in the condition" in which it was delivered it had a value of $325 per acre. There were findings that each of the Morris's made representations as to the status of the title knowing that they were false and that $25,000 exemplary damages should be assessed against each of them. Other findings related to plaintiff's fraud claim were, the statements made by Larry W. Morris concerning title were statements of fact rather than legal opinions, but that such statements made by the defendants to Finger were understood by Finger to be statements of legal opinion and that Finger re-

lied on the advice of his attorney in buying the property. The jury failed to find that Finger's attorney had been given facts concerning the property that would place a reasonable attorney on notice to investigate the title and failed to find that Finger relied solely on matters other than representations by sellers as to title.

It should be noted that as to the part of the court's charge relating to the fraud phase of the case there are many questions' as to the propriety of the form of the issues and instructions. In view of the disposition herein of the fraud part of the case those questions are immaterial.

All parties here recognize that if Art. 5510, V.A.T.S., is applicable to this case, Mrs. Smith had acquired limitation title to the 150-acre tract at the time of the sale to Finger. They also recognized that the three, five and 25-year statutes of limitations would not apply to perfect her limitation title because of the fact that she did not claim the property under a deed. The controversy grows out of the question as to the applicability of Art. 5511, V.A.T.S., which provides as follows:

> "A tract of land owned by one person, entirely surrounded by a tract or tracts owned, claimed or fenced by another, shall not be considered inclosed by a fence inclosing the circumscribing tract or tracts, or any part thereof; nor shall the possession by the owner or claimant of such circumscribing land of such interior tract be the peaceable and adverse possession contemplated by Article 5510 unless the same be segregated and separated from the circumscribing land by a fence, or unless at least one-tenth thereof be cultivated and used for agricultural purposes, or used for manufacturing purposes."

The appellant argues that as to each of the interior lots in the old subdivision, it was entirely surrounded by a tract or tracts owned, claimed or fenced by Mrs. Smith so that she could not acquire title of such interior lots under Art. 5510 unless it

was enclosed by a separate fence or unless one-tenth of it was cultivated or used for manufacturing purposes. Authority for this proposition is Smith v. Bradshaw, Tex.Civ.App., 93 S.W.2d 468, no writ hist. It is uncontroverted that the individual lots were not separately enclosed and that the use required by Art. 5511 was not made. The appellees argue, on the other hand, that Art. 5511 is not applicable because each individual lot abutted a dedicated street and therefore was not completely surrounded by property claimed by Mrs. Smith. The answer to those questions is not necessary to the disposition of this case.

Both the sellers and the buyer were represented in this transaction by able lawyers who were especially skilled in real estate law. A difficulty of establishing and defending title was well known to both. At the date of the deal both knew that numerous suits were pending wherein other parties were claiming title to several hundred of the lots in the old subdivision. It was known that in order to get City Title Company to issue a title policy the sellers had to establish an escrow fund and encumber 20 acres of the land to be used in settling claims against the property. It was known that other title companies had declined to issue such policies. In 1959 the owners had conveyed the property to another person who was to hold it under such deed and pay the taxes so as to perfect title under the five-year statute and then convey it back. This device was used in an effort to get another title company to issue a title policy. Apparently, however, the other title company declined to agree to issue the policy under such circumstances and the person reconveyed the property without completing the five year term.

It is true that the sellers in this case represented that they had good title to the land in question. In almost all real estate sales the seller represents, explicitly or impliedly, that he has good title. Such representation, if false, may sometimes give rise to a cause of action for fraud. Buchanan

v. Burnett, 102 Tex. 492, 119 S.W. 1141; Old National Life Insurance Company v. Bibbs, Tex.Civ.App., 184 S.W.2d 313, writ ref., w. o. m.; Dupree v. Savage, 154 S.W. 701, err. ref. There has been much discussion as to whether a statement that one owns property is a statement of fact or a statement of legal opinion. Even if it be considered a statement of an opinion it may well be false. The state of one's mind is a fact which may be misrepresented. Such a statement may also be construed as a statement of fact in that it is a representation that facts exist that lead the maker of the statement to believe that he has title. See Keeton, Fraud-Misrepresentations of Law, 15 Tex.L.Rev. 409.

■ A false statement, alone, does not create a cause of action for fraud. Before a false statement becomes actionable as fraud, there must be reliance by the complainant to his detriment. Buchanan v. Burnett, supra; Mason v. Mid-Continent Supply Co., Tex.Civ.App., 374 S.W.2d 922, n. r. e. In this case the buyer's lawyer and the buyer through his lawyer, fully knew the facts that existed which formed the basis for the sellers' opinion as to their title. They also knew the facts recited above which cast a doubt on the accuracy of that opinion. The primary duty of the buyer's lawyer was to protect the buyer in his acquisition of title to the property. It would have been a breach of that duty, under the circumstances of this case, for him to have relied on the sellers' opinion. Furthermore, the facts show that he did not so rely. Rather, it was the arrangement with City Title Company upon which the buyer and his attorney relied in the purchase. It was the failure of City Title Company, not the failure of the title to the property, that created the difficulty.

■ The appellant contends that the affidavits as to Mrs. Smith's possession and use of the property which were procured by the sellers were falsified in such a manner as to mislead him to believe that there had been such possession and use by Mrs.

Smith as to comply with Art. 5511. Several of the affiants testified during the trial that Mrs. Smith had not separately enclosed any of the lots and that the only cultivation had been a few scattered gardens. They testified that the property had been leased for grazing and hay had been cut from it. There had been no manufacturing on it.

The affidavits are not susceptible of the construction appellant would place upon them. It is obvious that their recitations contemplate the applicability of Art. 5510, not Art. 5511. They contain no recitations as to enclosures of individual lots. The only statements as to cultivation are in connection with cutting hay, pasturing of livestock, and raising gardens. In fact, they reveal that the entire tract was leased for grazing for several years. The sellers' lawyer, himself, took a lengthy statement from Mrs. Smith on the basis of which he concluded that she had perfected title under Art. 5510. He still maintained that opinion at the time he testified during the trial. The taking and furnishing of the affidavits did not constitute fraud. Furthermore, the buyer's attorney testified that he did not even read the affidavits. There is no evidence that Finger ever read or relied upon the affidavits.

 There is an additional reason why the buyer could not recover upon a cause of action for fraud, except insofar as it might be asserted as a defense to the sellers' cross-action. Such action was barred by limitations, a defense pleaded by the sellers. This suit was filed February 12, 1968. The latest date at which the buyer knew or should have known of the alleged fraud was at the time or soon after the collapse of the City Title Company in 1965. Thus the buyer's alleged cause of action for fraud accrued more than two years before the suit was filed. It is to be noted that insofar as the plaintiff sought recovery under Art. 4004, his suit was not for rescission nor breach of his contract. As to the fraud cause of action the two-year statute of limitations, Art. 5526, V.A.

T.S., is applicable. Stafford v. Wilkinson, 157 Tex. 483, 304 S.W.2d 364; Reynolds-Southwestern Corporation v. Dresser Industries, Inc., Tex.Civ.App., 438 S.W.2d 135, n. r. e.; Lacy v. Carson Manor Hotel, Tex.Civ.App., 297 S.W.2d 367, n. r. e.; Phillips v. Baker, Tex.Civ.App., 114 S.W. 2d 421, err. ref.; 59 Tex.Jur.2d, Vendor and Purchaser, Sec. 604, p. 145. The plaintiff's cause of action for fraud was barred by such statute of limitation.

The trial court properly disregarded the jury's findings as to the alleged cause of action.

In addition to his alleged cause of action for fraud, the plaintiff alleged a cause of action based upon breach of contract to sell the property. The contract recited:

"1.2 Seller further covenants, represents and warrants to Buyer that Seller owns and Seller agrees to convey to Buyer good, marketable and indefeasible title to The Tract, together with all improvements situated thereon, subject to no rights of others."

"5.3. The terms and provisions of this Agreement shall not merge with, be extinguished or otherwise affected by any subsequent conveyance or instrument by or between the parties hereto unless such instrument shall specifically so state and be signed by the parties hereto."

It is that language of the contract to sell that is the basis for plaintiff's alleged cause of action for contract. The sellers do not question their obligation under the general warranty in their deed. They have defended those suits filed by other parties asserting claims to the property within the old subdivision. As to most of the property bought by the plaintiff, there has been neither any ouster nor any suit filed by others claiming title. The jury found that the sellers breached their contract to the buyer's damage in the amount of $90,000.

 There can be no question but that the title delivered by the sellers did

not comply with the quoted terms of the contract to sell insofar as sellers were obliged to deliver marketable title. They admittedly did not deliver record title. Limitation title of the character here delivered is not "marketable title". Smith v. Jordan, Tex.Civ.App., 220 S.W.2d 481, no writ hist.; Lange, Land Titles & Title Examination, Sec. 314. However, any cause of action arising from that failure to perform the contract was barred by the four-year statute of limitations, Art. 5527, V.A. T.S. 59 Tex.Jur.2d, Vendor & Purchaser, Sec. 604, p. 145. Such cause of action arose on January 17, 1963, the date of the delivery of the deed to plaintiff. The lawsuit alleging such cause of action was not filed until February of 1968, more than four years later. The trial court therefore, correctly disregarded the jury's findings as to plaintiff's contract cause of action.

A different and more difficult question concerns the effect of the alleged breach of contract to deliver marketable title insofar as that breach is presented as a defense to the cross-plaintiffs' suit to recover on the purchase money note. Some confusion and conflict has long prevailed as to the effect of the statutes of limitation on a cause of action pleaded defensively as a setoff or counterclaim. See 18 Tex.L.Rev. 209—Statute of Limitations—Nature of Counter Claim as Affecting the Running of Limitations. A statute, Art. 5539c, V. A.T.S., relates to such question, but it did not become effective until September 1, 1969, too late to be of help in this case.

■ Fraud inducing the making of a contract can successfully be established as a defense to a suit on the contract even though, at the time such defensive plea is made, it would be barred by limitations if asserted as a basis for a recovery of damages. Reynolds-Southwestern Corporation v. Dresser Industries, Inc., supra. However, a breach of contract by the plaintiff cannot successfully be established by a defendant as a defense by way of setoff or counterclaim if at the time such defense is pled a cause of action for damages for such breach would be barred by limitations.

In Morriss-Buick Co. v. Davis, (Tex. Com.App., op. Adopted), 91 S.W.2d 313, at p. 314, the Court said:

"It is the law of this state that where the subject-matter of a defense interposed by the defendant constitutes an independent cause of action which does not go to the foundation of the plaintiff's demand, it cannot effect a reduction of the amount of the plaintiff's recovery except by way of set-off, and the statutes of limitation are available to the plaintiff in respect to such defense. Nelson v. San Antonio Traction Co., 107 Tex. 180, 175 S.W. 434. On the other hand, if the subject-matter of the defense be of an intrinsically defensive nature, which, if given effect, will operate merely as a negation of the plaintiff's asserted right to recover, or in abatement, either wholly or partially, of the amount claimed, the statute of limitation does not apply. Mason v. Peterson (Tex. Com.App.) 250 S.W. 142."

This same language was quoted in Southern Pacific Co. v. Porter, 160 Tex. 329, 331 S.W.2d 42, 44, as a correct statement of the relevant Texas law.

In Mason v. Peterson, (Tex.Com.App., judg. adopted and holding approved), 250 S.W. 142, 147, the Court said:

"* * * The distinction between partial or total failure of consideration of a contract by reason of fraud or mutual mistake, as a defense to an action on the contract of sale, on the one hand, and the right of action for damages for breach of or failure to comply with a contract, on the other, is clearly drawn in the following cases: (citing cases). In the former the relief may be awarded in abatement of the price contracted to be paid, and when so sought it is purely

defensive matter; whereas the right to relief for breach of contract is clearly independent of the obligation of the purchaser to pay the contract price, and relief is awarded in a suit for the price only by way of set-off or counterclaim, as to which limitation is a recognized plea. * * *"

■ On the basis of those authorities we feel compelled to hold that even though the plaintiff showed a breach of the contract to deliver marketable title, such breach was not available to him as a defense to the cross-plaintiff's suit on the purchase money note because more than four years had passed between the date of such breach and the filing of the pleading asserting it as a defense.

As noted above, Larry Morris and Ned B. Morris, III, joined by the other sellers of the property in question, executed an instrument placing title in Beatty Oldham as trustee. By this instrument Oldham was empowered to perform the duties of the sellers in connection with the sale of the property. On November 19, 1964, Larry Morris and Ned B. Morris, III, executed an instrument revoking and terminating the authority of Oldham to act in such capacity. A copy of this instrument of revocation was filed in the deed records of Harris County and the other parties, including the buyer and his attorney, were given copies. On December 30, 1965, after the title company had failed, thus stopping further development of the property, Beatty Oldham, as trustee, and the buyer executed an instrument to which the parties have referred as a "moratorium agreement." In such instrument it was recited that the parties had "agreed that it would be advisable to take and perform such actions as may be necessary to mature title under the five-year statutes of limitations. * * *" The buyer agreed that he would pay the taxes on the land, would retain possession of it and would file suit to clear title after the passage of sufficient time to meet the requirements of the limitation

statute. Oldham agreed to waive interest on the unpaid balance on the note and to suspend payments on the principal during such period of time as was necessary to perfect the limitation title. The appellant contends that the instrument executed by the Morris's on November 19, 1964 was not effective to terminate Oldham's authority to make the moratorium agreement, and that, since title had not so been cleared at the time of the trial, the trial court erred in rendering judgment for cross-plaintiff on the purchase money note. It is contended that the "moratorium agreement" precluded their liability at the date of trial.

There was no written trust agreement, as such, by which Beatty Oldham was designated trustee. In the instrument executed on January 15, 1963 by the sellers, heretofore referred to, it was "agreed that as a matter of convenience, Beatty Oldham is acting and holding title to all of said 149.-431 acres of land as trustee for the use and benefit of the following named persons * * *." The instrument then recites that each of the sellers empower Oldham to perform all of the terms of the contract of sale and of the indemnity agreement with City Title Company.

■ There may be a question as to whether any trust at all was created in the relationship between these parties. There may also be a question as to whether, if a trust was created, the trustee was empowered to waive interest on the note and to suspend payments on the principal. Those questions, however, need not be answered because the trust, if any, was not "expressly made irrevocable by the terms of the instrument creating the same," so that it was revocable under the terms of Art. 7425b–41. At the date Oldham executed the "moratorium agreement" his power to bind the Morris's had been effectively revoked, of which fact all of the parties here had notice.

■ No issues, except as to attorney fees, were submitted to the jury with ref-

erence to the cross-plaintiffs' suit to recover on their share of the note given in payment for the property. The jury found $6,000 as reasonable attorney's fees for the recovery of which the note provided. An accountant computed the balance due on the one-third interest owned by the Morris's as to the principal and interest on the note as of April 8, 1970. That computation showed $64,402.13 due upon the principal and $33,281.83 due upon the interest. The note provided for interest at the rate of 5% with 10% interest payable on all delinquent payments of principal and interest. The accountant did not have personal knowledge of the payments made and made his computation from assumed facts. Appellant contends by point of error that in such computation the accountant erred in assuming that certain payments were late and that there was no evidence that such payments were late, as assumed by the accountant. The appellees in their reply to appellant's point of error simply say that the accountant's computation was correct, but failed to point out the evidence showing that the questioned payments were late. We have been unable to find any such evidence. A mathematical computation based upon the assumption that the questioned payments were timely made is included in appellant's brief. Its mathematical accuracy is not challenged. It shows that one-third of the correct balance due on April 27, 1970 was $63,977.26 principal and $29,836.93 interest. The appellant's point of error No. 17, with reference to such erroneous computation, is sustained. The judgment of the trial court is reformed to the extent that cross-plaintiffs' recovery from cross-defendant is reduced to conform to the correct computation of the principal and interest due on the note as of April 27, 1970. As so reformed, the judgment of the trial court is affirmed. Costs of appeal are adjudged one-half against the appellant and one-half against the appellees.

Reformed and Affirmed.