**Douglas SEWARD, Jr., Plaintiff,**

v.

**UNION PUMP COMPANY, Defendant.**

**Civ. A. No. 73–H–1031.**

United States District Court,
S. D. Texas,
Houston Division.

March 10, 1977.

John H. Marshall, Houston, Tex., for plaintiff.

Michael R. Waller, Childs, Fortenbach, Beck & Guyton, Houston, Tex., for defendant.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

SINGLETON, District Judge.

On July 20, 1973, plaintiff Douglas Seward, Jr., filed his action to recover a bonus

which he claims is due him in connection with his employment with the defendant Union Pump Company during 1971. The defendant has denied owing the plaintiff any further money and has filed a counterclaim to recover one-half of the compensation it paid to the plaintiff for the years 1969, 1970, and 1971. The basis for the counterclaim is an alleged appropriation of the time and efforts of defendant's personnel to the use and benefit of the plaintiff's company, Union Gulf International, Inc.

On November 8, 1976, trial commenced before the court without a jury. The court, having heard all the evidence and the argument of counsel, makes the following findings of fact and conclusions of law.

### Findings of Fact

Douglas Seward, Jr., was hired by the Union Pump Company on or about August 1, 1960, as the Regional Manager of its Southwestern Region. After a reorganization of the regions, Mr. Seward became Regional Manager of the Southern Region, a position he held until his termination on July 29, 1971. At all relevant times, the Union Pump Company was engaged in the business of the production and sale of new industrial pumps on a nationwide basis. As regional manager, the plaintiff was an executive employee of Union Pump and a member of the management. He was responsible for the sale and distribution of the product through numerous salesmen located in several cities.

During his tenure, Mr. Seward was paid a salary of $1,200 per month which was later raised to $1,300 per month. This amount was paid regardless of regional sales or any other factor. In addition, regional managers such as the plaintiff were compensated under a bonus-incentive program. This bonus program, together with Mr. Seward's termination, are the basis of this suit.

Mr. Seward and Union Pump first entered into a bonus agreement on September 16, 1960. This agreement remained in full force and effect until the parties began renegotiation in 1967. After these negotiations between Mr. Seward and J. B. Freed,

an officer of Union Pump, a second bonus agreement was entered into on September 9, 1967. Although there were some differences in the manner in which the bonus was computed, the "governing rules" for this new agreement were substantially the same as the "governing rules" for the 1960 bonus agreement. This second bonus plan (hereinafter referred to as the "1967 Bonus Agreement") was prepared by the defendant and remained in effect up through the time of Mr. Seward's termination on July 31, 1971. Under the 1967 Bonus Agreement, Mr. Seward was paid a bonus based on the specified formula for the years 1967, 1968, 1969, and through July 3, 1971.

As a threshold issue on the right of Mr. Seward to collect the bonus alleged to be due him, this court must address the circumstances under which he was fired. The "governing rules" of the 1967 Bonus Agreement provide in paragraph 6: "Should the Company dismiss you for misconduct or other just cause, all claims to the bonus are thereupon waived and no bonus whatever will be paid for the period involved or in a succeeding period."

On July 29, 1971, J. B. Freed, president of Union Pump Company, telephoned Douglas Seward and terminated his employment with the company. At that time, J. B. Freed gave only one reason for the termination, that being that the Southern and Western regions were being consolidated and that William C. Clark would be the new regional manager of the combined regions and there was no position available for Mr. Seward. Union Pump has argued herein that Mr. Seward was fired for misconduct or other just cause. Among the just causes now alleged are the plaintiff's involvement with Union Gulf International, Inc., and the plaintiff's practice of taking what is considered by upper management to be a too-active role in the day-to-day work of the salesmen.

This court finds that Union Pump Company did not discharge Douglas Seward for misconduct or other just cause. It is clear from the unequivocal admission of J. B. Freed that the plaintiff was fired without

cause. It was stipulated that Mr. Freed did not know on July 29, 1971, of the plaintiff's involvement with Union Gulf International, Inc., although his assistant, D. C. McHolme did have such knowledge "several weeks" earlier. (See paragraph 2 of plaintiff's exhibit No. 20.) The alleged dispute regarding the role of a regional manager in sales marketing was also not a cause for his being terminated. This court believes that Mr. Seward performed the duties of regional manager in a reasonable and acceptable manner.

The actions of the defendant also belie their claim that Mr. Seward was fired with cause. Under the 1967 bonus plan, Mr. Seward was paid a bonus on July 30, 1971. J. B. Freed told Mr. Seward on July 29, 1971, that Union Pump Company would pay him a bonus for the remainder of the year. The evidence is overwhelming, therefore, that the only reason for Mr. Seward's termination was the reason given—a reason which does not qualify as misconduct or just cause such as to negate any entitlement to a bonus.

The bonus payment Mr. Seward received in 1971 was on sales of $1,893,163.22 through July 3, 1971. This amount represented the equipment sold and shipped as of that date. In addition to his bonus for the month of July, 1971, up until the time of his termination, Mr. Seward seeks to recover a bonus on all orders accepted but unshipped for the Southern Region as of July 29, 1971.

The sales for the entire Southern Region of Union Pump Company for the year 1971 were $3,742,328, a significant portion of the defendant's business that year. During July, 1971, the sales for pumps and parts for the Southern Region totaled $384,271.92. The orders for pumps and parts for the Southern Region which had been received and accepted or which were later accepted as of July 29, 1971, but had not been shipped, were $2,737,890.68, of which $1,449,522.30 were shipped on or before December 31, 1971, and the balance of $1,288,368.38 were shipped in 1972. Of the orders which were accepted as of July 29, 1971, but which were shipped in 1972, the largest item was the million dollar sale of pumps to McDermott. The personal service and labor of the plaintiff was a substantial factor in that sale. This court finds that Mr. Seward, under the 1967 bonus plan, was entitled to receive a bonus of three-fourths of one percent of the $384,271.92 sales for July, 1971, or a total of $2,882.04 and that he was entitled to receive a bonus of three-fourths of one percent of the $2,737,890.68 for orders accepted but unshipped as of July 29, 1971, or a total of $20,534.18.

Mr. Seward made a written demand of Union Pump Company for the payment of the balance due under the 1967 bonus plan, however, more than thirty days lapsed since that demand, and Union Pump failed to make payment.

With regard to the counterclaim filed by Union Pump based on plaintiff's involvement with Union Gulf International, Inc., this court finds that the transactions or occurrences of the counterclaim do not arise out of the same transaction or occurrence of Mr. Seward's cause of action for recovery of a bonus.

Douglas Seward, Jr., formed Union Gulf International, Inc., in February, 1968, and was its president and sole stockholder during the years 1969, 1970, and 1971. Although its original purpose was to export telephone poles, Union Gulf was primarily engaged in the business of refurbishing, renting, leasing, and selling new and used pumps of the same or similar types that were manufactured by Union Pump Company. In February, 1969, it hired its first full-time employee, Mr. Keeler, who worked in the company's office in a location other than where Union Pump maintained its Houston office.

It is clear from the evidence that during the years 1969, 1970, and 1971, Union Gulf International, Inc., neither competed with nor injured Union Pump Company. During those years, the Union Pump Company was aware of the business opportunities in the leasing of pumps and the opportunities in dealing in used pumps. However, according to J. B. Freed, the president of Union Pump, the company never desired to get

into that business. Douglas Seward neither failed to make any business opportunity available to Union Pump Company nor violated any of the terms of his employment—he acted in good faith toward Union Pump Company. Even if this court were to believe that Mr. Seward exercised bad faith, it is still an inescapable conclusion that Union Pump failed to prove any damages for lost business opportunities because of Union Gulf during the years 1969, 1970, and 1971.

There is no doubt that Mr. Seward's secretary, Ronald Wunsch, a Union Pump employee, attended to the personal business of Mr. Seward and to the business of Union Gulf. However, it is not unusual for a managerial officer to use his secretary for some personal business. Such a practice is often encouraged. This court finds that Union Pump Company knew and expected Ronald Wunsch to take care of some of the personal business of Mr. Seward. The central issue here is the impact of such a practice. Mr. Seward did not take advantage of the availability of Mr. Wunsch, to the detriment of Union Pump. Ronald Wunsch performed all of his Union Pump duties to the fullest reasonable extent. Union Gulf was not a large business, whose affairs required daily attention. The occasional use of Mr. Wunsch, to write Union Gulf checks and other ministerial tasks, did not constitute an appropriation of Union Pump's employee to the personal benefit of Mr. Seward. The Union Pump Company sustained no loss by reason of Mr. Wunsch performing some tasks for Union Gulf and Mr. Seward.

The only other connection between Union Pump and Mr. Seward's Union Gulf activities was that Mr. Seward gave several of his Union Gulf business cards to Union Pump employees in an attempt to obtain some referrals. This certainly does not represent an inappropriate use of Union Pump employees. In fact, since an order for a new pump through Union Pump takes nearly six weeks to process, the availability of a leased pump through Union Gulf in emergency situations could be a service to Union Pump customers.

It is clear, therefore, that the counterclaim by Union Pump is based on different factual and legal issues than Mr. Seward's claim for his bonus compensation.

Furthermore, the bonus compensation for which Mr. Seward sues was a payment to him for personal services or labor done within the meaning of Tex.Rev.Civ.Stat. Ann. art. 2226. The bonus payments were not surplus compensation unrelated to any specific labor. Instead, they represented compensation, provided for by contract as an important and integral part of Mr. Seward's total compensation for his personal service, functionally related to specific sales of equipment in the Southern Region. In prosecuting his claim, Mr. Seward hired an attorney to represent him. In light of the evidence presented on attorneys fees, the nature of the issues presented, and the amount of the recovery, this court finds that a reasonable fee for such representation is $7,500.

With regard to prejudgment interest, it was necessary to attribute sales to certain calendar years. The parties agree that prejudgment interest at the rate of six percent per annum shall accrue from January 31, 1972, to the date of judgment on $13,753.46. This amount represents plaintiff's bonus for orders shipped during 1971. The parties further agree that prejudgment interest at the rate of six percent per annum shall accrue from January 31, 1973, to the date of judgment on $9,662.76, representing a bonus on orders shipped during 1972.

### Conclusions of Law

This court has jurisdiction of the parties and the subject matter because the uncontroverted evidence is that plaintiff is a resident and a citizen of the state of Texas and defendant is a corporation incorporated under the laws of the state of Michigan and has its principal place of business in Battle Creek, Michigan, and the amount in controversy is in excess of $10,000. 28 U.S.C. § 1332(a)(1).

The 1967 Bonus Agreement between Douglas Seward and Union Pump

Company was an unambiguous contract of binding legal effect for the year 1971. In construing the agreement, this court is mindful of the general rule of construction that the contract is to be strictly construed against the party preparing the document, in this case Union Pump Company. The method of computing the bonus is clear from the agreement. According to numbered paragraph two of the agreement, the bonus is paid "on sales." Thus Mr. Seward earned his bonus when an order was accepted by Union Pump Company. Although the bonus accrued to Mr. Seward when an order was accepted, payment of the bonus was due when the order was shipped.

■ Union Pump Company's contention that the agreement would only allow Mr. Seward to recover a bonus on orders actually shipped by the date of his termination is contrary to the plain language of the agreement and the basic tenet of the contract law that a sale is complete upon acceptance by the offeree. The provisions of the agreement emphasized by Union Pump specify only the method and timing of the payment, not its accrual. For example, it is clear that bonuses are to be computed and paid annually and that no bonus will be paid on returned orders, bad debts, etc. Mr. Seward is therefore entitled to receive a bonus on all orders accepted as of the date of his termination and which were later shipped to the customer. The amount of the bonus he is entitled to recover was calculated *supra.* Mr. Seward is further entitled to prejudgment interest at the rate of six percent per annum from the date the bonus was due and payable to the date of judgment. Tex.Rev.Civ.Stat.Ann. art. 5069–1.03. The amount on which such interest is to run is also calculated *supra.*

■ Furthermore, Mr. Seward's claim for the unpaid bonus is unaffected by the provision in the agreement which provides for waiver of the bonus in the event the regional manager is dismissed for just cause. In this case, not only did the president of Union Pump admit that Mr. Seward was fired without just cause, but an employer who discharges an employee for a stated reason (*i. e.* reorganization of sales regions) may not later assign another ground for termination that the employer either knew or should have known, but wasn't assigned. *St. Louis Southwestern Ry. Co. of Texas v. Hixon,* 104 Tex. 267, 137 S.W. 343 (1911). Even if Union Pump would be permitted to assign after the fact a different reason for the firing, that reason must be viewed with skepticism when the employer breaks his silence on that issue only in response to the employee's claim for damages.

■ With regard to Union Pump's counterclaim to recover one-half of the compensation it paid to Mr. Seward for 1969, 1970, and 1971, this court finds that such counterclaim is barred by the statute of limitations. Tex.Rev.Civ.Stat.Ann. art. 5526 provides for a two-year limitations period in an action for the collection of a "debt" where the indebtedness is not evidenced in writing. Although it is disputed as to exactly when Union Pump first became aware of the facts which they have made a basis of their counterclaim, the defendants admit that they had such knowledge by August 4, 1971. It is undisputed that plaintiff filed this cause of action on July 7, 1973, and Union Pump filed its Answer and Counterclaim on August 16, 1973, well within the required answer date, but at least twelve days subsequent to the running of the statute of limitations. Union Pump argues that its counterclaim is not barred by reason of Tex.Rev. Civ.Stat.Ann. art. 5539c, which provides:

> In the event a pleading asserting a cause of action is filed under circumstances where at the date when answer thereto is required by law a counterclaim or cross claim would otherwise be barred by the applicable statute of limitation, then the party so answering may, within 30 days following such answer date file a counterclaim or cross claim in such cause and the period of limitation is hereby extended for such period of time provided that the counterclaim or cross claim arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim.

In light of this court's finding that the counterclaim does not arise out of the same transaction or occurrence as the plaintiff's claim, the counterclaim is barred by limitations. Similarly, Union Pump is barred from any right of offset or recoupment based on the same facts raised in their counterclaim. *Finger v. Morris,* 468 S.W.2d 572 (Tex.Civ.App.—Houston [14th District] 1971, writ ref'd n. r. e.).

Even if the counterclaim could be maintained, there is no evidence to support any damage to Union Pump by reason of Mr. Seward's activities with Union Gulf. While it is true that an employee of Mr. Seward's position has a fiduciary duty of good faith, honesty, and loyalty to his employer and that an employer may recover damages from his employees to the extent that the fiduciary duty is violated, an employee may be an officer and owner of another corporation without breaching his fiduciary duty to his employer. Even if the other corporation is in a similar business to that of the employer, there is not necessarily a breach. Thus, the activities of Mr. Seward, as described in this court's findings of fact, do not constitute a breach of the fiduciary duty he owed to Union Pump.

Tex.Rev.Civ.Stat.Ann. art. 2226 provides: Any person . . . having a valid claim against a person or corporation for personal service rendered, [or] labor done . . . may present the same to such persons or corporation . . .; and if, at the expiration of 30 days thereafter, the claim has not been paid or satisfied, and he should finally obtain judgment for any amount thereof presented for payment to such persons or corporation, he may, if represented by an attorney, also recover, in addition to his claim and costs, a reasonable amount as attorney's fees.

In the case of Mr. Seward's claim against Union Pump, since the bonus payments are an integral part of Mr. Seward's wages for the personal services, the payments are not part of a special contract such as would remove the claim from the applicability of article 2226. *See Tenneco Oil Co. v. Padre Drilling Co.,* 453 S.W.2d 814 (Tex.Sup.1970);

*Toch v. Eric Schuster Corp.,* 490 S.W.2d 618 (Tex.Civ.App.—Dallas 1972, writ ref'd n. r. e.). In light of the timely demand made by the plaintiff, a reasonable attorneys fee of $7,500 should be awarded pursuant to article 2226.

Douglas Seward is therefore entitled to receive (1) $13,753.46 plus prejudgment interest at the rate of six percent per annum on such amount from January 31, 1972, to the date of judgment; (2) $9,662.76 plus prejudgment interest at the rate of six percent per annum on such amount from January 31, 1973, to the date of judgment; (3) attorneys fees in the amount of $7,500; and (4) costs of court. In addition, Mr. Seward is entitled to recover interest at the rate of nine percent per annum on the total amount of judgment. Tex.Rev.Civ.Stat. Ann. art. 5069–1.05.

In the event that any of the foregoing Findings of Fact also constitute Conclusions of Law, they are also hereby adopted as Conclusions of Law. In the event that any of the foregoing Conclusions of Law also constitute Findings of Fact, they are also hereby adopted as Findings of Fact.

The plaintiff is hereby directed to submit a Final Judgment, approved as to form by the defendant, consistent with these Findings of Fact and Conclusions of Law within fifteen (15) days of the entry hereof.